UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ADAM WHITE,

       Plaintiff,

  -against-                04 Civ. 1611 (LAK)

FIRST AMERICAN REGISTRY,

       Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

  James B. Fishman
  FISHMAN & NEIL, LLP

  Seth R. Lesser
  Andrew P. Bell
  LOCKS LAW FIRM, PLLC

  Stacy J. Canan
  AARP FOUNDATION

  *Attorneys for Plaintiff*

  Charles A. Newman
  Jason Maschmann
  Suzanne M. Berger
  BRYAN CAVE LLP
  *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

  Plaintiff brings this action on behalf of himself and all others similarly situated

against defendant First American Registry ("FAR") for violating the Fair Credit Reporting Act[1] ("FCRA"), the New York Fair Credit Reporting Act[2] ("NYFCRA"), and Section 349 of the New York General Business Law. He now moves pursuant to Federal Rule of Civil Procedure 23(b)(2) for certification of a class of "all persons who are listed, or who were listed within the two years prior to the initiation of this action, in [FAR's] National RegistryCheck databases as a tenant, occupant, respondent, defendant or other similar categorization in a proceeding commenced in the Civil Court of the City of New York, Housing Part," other than defendant and its affiliates and persons named in such proceedings as landlords. Defendant moves to exclude plaintiff's Exhibit F submitted in support of the motion for class certification.

*Background*

FAR describes itself as "the nation's largest and most experienced information management company, providing the multi-family housing industry with risk management expertise for resident screening of applicants."[3] Among the services it sells is prospective tenant screening – it offers, for a fee, "immediate internet access to The National Registry Check™," which it states is a "comprehensive proprietary database of over 33 million landlord/tenant eviction court records."[4] "In other words," as the complaint alleges, "it sells information about potential residential tenants

---

[1] 15 U.S.C. §§ 1681 *et seq.*

[2] N.Y. GEN. BUS. L.. §§ 380 to 380-t (McKinney 1996 & Supp. 2005).

[3] Am. Cpt. ¶ 11.

[4] *Id.*

3

to landlords and real estate management companies that is based upon court records."⁵ Put another way, it offers a product readily usable by its customers to blacklist applicants to rent apartments and houses who have been involved in litigation with landlords.

Plaintiff here alleges that FAR systematically has failed to employ "reasonable procedures to ensure maximum possible accuracy" in preparing and issuing its Registry Check™ reports in connection with cases brought in the New York City Housing Court, thus violating both federal and state statutes.⁶ The complaint seeks declaratory and injunctive relief as well as statutory and punitive damages.⁷

*Discussion*

In order to obtain certification of a class, the proponent must demonstrate that:

> "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."⁸

As FAR concedes numerosity, it is necessary to deal with only the three latter criteria.

---

⁵ *Id.*

⁶ 15 U.S.C. § 1681e(b); N.Y. GEN. BUS. L. §§ 349, 380-j, 380-k (McKinney 1996 & Supp. 2005).

⁷ The amended complaint seeks, on behalf of the plaintiff, actual damages or, in the alternative, statutory damages under 15 U.S.C. § 1681n and N.Y. GEN. BUS. L. § 349(h). Plaintiff's memorandum in support of class certification, implies that plaintiff no longer seeks actual damages. Pl. Mem. 14. The Court so assumes.

⁸ FED. R. CIV. P. 23(a).

*Commonality and Typicality*

To begin, FAR disputes commonality and typicality. It claims that the proposed class definition includes persons as to whom it never issued a report and that an individualized consideration would be required even with respect to those as to whom it has done so to determine such matters as whether the report was accurate, whether the person was harmed by any inaccuracy, and so on. But these arguments are insubstantial.

At the heart of this case is a simple question: whether FAR had "reasonable procedures to ensure maximum possible accuracy" of its reports. That question is common to every member of the proposed class, as FAR concededly employed the same procedures to all. Rule 23(a)(2) requires no more.[9]

---

[9] *E.g., Savino v. Computer Credit, Inc.,* 173 F.R.D. 346, 352 (E.D.N.Y. 1997), *aff'd,* 164 F.3d 81 (2d Cir. 1998); *see also Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."); *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 562 (S.D.N.Y. 2004) (finding commonality and typicality notwithstanding minor variations regarding the impact of individual plaintiffs' alleged injuries).

FAR relies heavily on *Pendleton v. Trans Union Systems Corp.,* 76 F.R.D. 192 (E.D. Pa. 1977), which denied class certification in a Section 1681e(b) case on the grounds argued by defendant. While the *Pendleton* court accurately identified a host of individual issues that could arise in a case under Section 1681e(b), the resolution of which would be necessary to resolving claims for compensatory damages, these matters, in my judgment, go to the issue of whether common questions predominate which in any case is relevant only in a (b)(3) class determination. Here, every member of the class is threatened with injury if, as plaintiff alleges, FAR does not have appropriate procedures for ensuring the accuracy of the information it sells even if particular class members have not yet been subjects of reports. Thus, the adequacy of FAR's procedures is common to every member of the class. To whatever extent *Pendleton* may be construed to hold otherwise, I respectfully disagree.

*Adequacy of Representation*

FAR challenges also the adequacy of plaintiff's representation of the proposed class. It asserts, *inter alia*, that White does not have standing to pursue a claim for injunctive relief because he does not face any threat of future injury. It contends further that White's claim for injunctive relief is moot because FAR already corrected his report and he consequently cannot benefit from the relief he seeks.

The plaintiff must establish standing and must do so with respect to each claim and form of relief sought.[10] The "irreducible constitutional minimum of standing" is an injury-in-fact, causation and redressibility.[11] In *City of Los Angeles v. Lyons*,[12] the Supreme Court held that a plaintiff seeking injunctive relief cannot rely on the existence of a past injury, but must show that he or she is likely to suffer future injury.[13] Consequently, where, as here, a plaintiff challenges an allegedly wrongful policy, he or she must allege credibly a "realistic threat from the policy."[14]

A claim becomes moot "when the parties lack a legally cognizable interest in the

---

[10] *Bauer v. Veneman*, 352 F.3d 625, 641 n.15 (2d Cir. 2003).

[11] *Lujan v. Defenders of the Wildlife*, 504 U.S. 555, 560 (1992); *Allen v. Wright*, 468 U.S. 737, 756 (1984).

[12] 461 U.S. 95 (1983).

[13] *Id.* at 105, 107; *accord DeShawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998).

[14] *Friends of the Earth, Inc. v. Laidlaw Env. Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000).

6

outcome."[15] A party maintains a personal stake in the claim where some injury could be redressed by the relief sought.[16] In Professor Monaghan's succinct explanation, "[m]ootness is . . . the doctrine of standing set in a time frame: The requisite personal interest must exist at the commencement of the litigation (standing) must continue through its existence (mootness)."[17]

White obtained a copy of his FAR Registry Check report after being denied an apartment in Brooklyn. He discovered that it listed incorrectly the status of a proceeding captioned *Koppelman v. White*, filed in December 1996 in New York City Housing Court, as being "case filed." In fact, the case had been dismissed in January 1997 after neither party appeared in court.[18] On July 3, 2002, he wrote to FAR, informed it of the report's inaccuracy, and requested that it remove any record of the proceeding from his report.[19] FAR responded to this inquiry on July 16, 2002. It informed White that it had investigated the listing he disputed and changed the report to remove the entry, and provided a copy of the corrected report.[20] This case was filed on February 26, 2004.

---

[15] *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (internal citation and quotation marks omitted).

[16] *DeShawn E.*, 156 F.3d at 345; *Fox v. Bd. of Trustees of State Univ. of New York*, 42 F.3d 135, 140 (2d Cir. 1994).

[17] Henry Monaghan, *Constitutional Adjudication: The Who and When*, 82 YALE L.J. 1363, 1384 (1973).

[18] Bell Reply Decl., Ex. A; Berger Decl., Ex. K.

[19] Berger Decl., Ex. L.

[20] Berger Decl., Ex. M.

As this chronology of events shows, White's report was corrected no later than July 16, 2002, well over a year before the commencement of this action. White could be injured by FAR's allegedly inadequate reporting procedures only if he were to apply to rent another apartment, the landlord or rental agent requested a FAR Registry Check report, and the report appeared as it did prior to July 16, 2002. He offers no reason to believe that such a report would appear in its uncorrected form. Consequently, the risk of any future injury as a result of FAR's policy is speculative and falls well short of the realistic threat required to obtain equitable relief.

Undaunted, White contends that he may represent the class even if he does not have standing to pursue injunctive relief and his claim for such relief is moot. Citing the Second Circuit's statement in *Martens v. Thomann*,[21] he asserts that a "class representative[] may continue to represent a class even if [his] individual claims become moot."[22]

A representative plaintiff may continue to represent a class following the mooting of that plaintiff's own claim if the class already has been certified,[23] or in circumstances in which certification relates back to the filing of the case.[24] In this case, however, White has not faced a realistic threat of future injury since July 2002. Consequently, he does not have standing to pursue injunctive relief on behalf of the class now. Indeed, he has not had such standing at any point during

---

[21] 273 F.3d 159 (2d Cir. 2001).

[22] *Id.* at 173 n.10.

[23] *Id.* ("[U]pon certification of a class, the class representative must have individual standing").

[24] *County of Riverside v. McGlaughlin*, 500 U.S. 44, 52 (1991).

this litigation.

White next asserts that his claims come within two exceptions to the mootness doctrine, as they are claims that are capable of repetition yet evade review and were mooted by the defendant's voluntary cessation of wrongful conduct. He correctly identifies the legal principles, as there are exceptions to the mootness doctrine where a plaintiff has standing to pursue a claim at the commencement of the case but loses a personal interest as the case moves forward.[25] But when "a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review," for example, "will not entitle the complainant to a federal judicial forum."[26] As White did not have standing to pursue injunctive relief at the time the complaint was filed, he cannot rely upon these exceptions to the mootness doctrine to allow him to go forward on

---

[25] *E.g.*, *Roe v. Wade*, 410 U.S. 113 (1973) (pregnant woman's challenge to abortion statute not mooted when pregnancy terminated).

[26] *Friends of the Earth, Inc.*, 528 at 191; *Renne v. Geary*, 501 U.S. 312, 320 (1991); *see also Steel Co. v. Citizens for a Better Environment*, 530 U.S. 83, 109 (1998) (presumption from future injury that arises when a defendant has voluntarily ceased wrongful conduct cannot be used to establish likelihood of harm necessary for initial standing).

behalf of the putative class.[27] He therefore is not an adequate class representative.[28]

*Conclusion*

For the foregoing reasons, plaintiff's motion for class certification [docket item 67] is denied. Defendant's renewed motion [docket item 105] to exclude Exhibit F is denied as moot.

SO ORDERED.

Dated: August 12, 2005

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[27] This is one of the primary ways in which the doctrines of mootness and standing differ. As the Supreme Court has explained:

> "When, for example, a mentally disabled patient files a lawsuit challenging her confinement in a segregated institution, her postcomplaint transfer to a community-based program will not moot the action, *Olmstead v. L.C.,* 527 U.S. 581, 594, n. 6, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999), despite the fact that she would have lacked initial standing had she filed the complaint after the transfer. Standing admits of no similar exception; if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum." *Friends of the Earth, Inc.*, 528 U.S. 167, 190-91.

[28] This is not to say that the entire action is moot or that plaintiff does not have standing to pursue his own claims for monetary relief.