UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ADAM WHITE and DERA JACKSON-DANIELS,
individually and on behalf of all others                    04-CV-1611
similarly situated,                                         (LAK)

        Plaintiffs,

      -against-

FIRST ADVANTAGE SAFERENT, INC.,

        Defendant.
-----------------------------------------------------------------X

PLAINTIFFS' CO-LEAD SETTLEMENT COUNSEL'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR APPROVAL OF ATTORNEYS' FEES AND COSTS
AND CLASS REPRESENTATIVE'S ENHANCEMENTS,

FISHMAN & NEIL, LLP                    LOCKS LAW FIRM PLLC
James B. Fishman (JBF 8998)            Seth R. Lesser (SRL 5560)
305 Broadway                           Andrew P. Bell (APB 1309)
Suite 900                              110 East 55th Street
New York, NY  10007                    New York, NY 10022
(212) 897 5840                         (212) 838 3333
www.tenantslaw.net                     www.lockslaw.com
ww.MyFairCredit.com

AARP FOUNDATION
Stacy J. Canan (SJC 4745)
601 E Street, N.W.
Washington, D.C.  20049
(202) 434 6045
www.aarp.org/foundation

Plaintiffs' Co-Lead Settlement Counsel

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

I.      PRELIMINARY STATEMENT .................................................. 1

II.     THE LEGAL STANDARDS GOVERNING
        THE AWARD OF ATTORNEYS' FEES ..................................................... 3

        A.     Plaintiffs' Counsel's Lodestar ............................................... 5

        B.     Plaintiffs' Counsel's Requested Fees
                Represent a Most Modest Lodestar Multiplier ...................................... 8

        C.     Contingent Nature Of The Fee
                And Time And Labor Spent ................................................... 9

        D.     Standing And Ability of Plaintiffs'
                And Defendant's Counsel ................................................... 11

        E.     Public Policy Considerations Support
                the Reasonableness of the Requested Fees ........................................ 13

        F.     The Reaction of the Class Confirms that the
                Requested Fees are Reasonable ................................................. 14

III.    PLAINTIFFS' COUNSEL SHOULD BE REIMBURSED
        FOR THEIR OUT-OF-POCKET EXPENSES ............................................. 14

IV.     THE TWO CLASS REPRESENTATIVE SHOULD BE
        AWARDED THEIR REQUESTED ENHANCEMENTS ............................................ 15

V.      CONCLUSION ........................................................................ 17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alpine Pharmacy v. Chas. Pfizer & Co.*,
  481 F.2d 1045 ............................................................................................ 9

*Arenson v. Board of Trade*,
  372 F.Supp. 1349 (N.D. Ill. 1974) .............................................................. 13

*Bell Atlantic Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993) ......................................................................... 14

*Blum v. Stenson*,
  465 U.S. 886 (1984) ...................................................................................... 6

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ...................................................................................... 4

*In re Bristol Myers Squibb Securities Litigation*,
  361 F.Supp.2d 229 (S.D.N.Y. 2005) ............................................................ 8

*Brown v. Phillips Petroleum Co.*,
  838 F.2d 451 (10 Cir. 1988) ....................................................................... 11

*Central R.R. & Banking Co. v. Pettus*,
  113 U.S. 116 (1885) ...................................................................................... 4

*Cf. Ingram v. The Coca-Cola Co.*,
  200 F.R.D.685 (N.D. Ga. 2001) ................................................................. 15

*Cf. Quesada v. Thomason*,
  850 F.2d 537 (9th Cir. 1988) ........................................................................ 5

*Compare, e.g., In re Visa Check/Mastermoney Antitrust Litigation*,
  297 F.Supp.2d 503 (E.D.N.Y. 2003) ............................................................ 8

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ................................................................... 15

*Dolgow v. Anderson*,
  43 F.R.D. 472 (E.D.N.Y. 1968),
  rev'd on other grounds, 438 F.2d 825 (2d Cir. 1970) .................................. 13

ii

*In re Dun & Bradstreet Credit Services Customer Litigation*,
    130 F.R.D.366 (S.D. Ohion 1990) ..................................................................... 15

*In re First Capital Holdings Corp. Finance Products Sec. Litigation*,
    33 F.3d 29 (9th Cir. 1994) ............................................................................ 3, 5

*In re GNC Shareholder Litigation: All Actions*,
    668 F.Supp. 450 (W.D. Pa. 1987) ..................................................................... 15

*General Public Utilities, [1983-1984 Transfer Binder]*,
    Fed.Sec.L.Rep. (CCH) ¶ 99,556 (D.N.J. Nov. 19, 1983) ...................................... 14

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ........................................................................ 14-15

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ............................................................................... 3, 6, 11

*In re Immunex Sec. Litigation*,
    864 F.Supp. 142 (W.D. Wash 1994) ................................................................. 15

*In re Jackson Lockdown/MCO Cases*,
    107 F.R.D. 703 (E.D. Mich. 1985) ................................................................... 15

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ............................................................................. 3

*In re King Resources Co. Sec. Litigation*,
    420 F.Supp. 610 (D. Colo. 1976) ..................................................................... 13

*Kirsch v. Fleet Street, Ltd.*,
    148 F.3d 149 (2d Cir. 1998) ............................................................................... 5

*Koppel v. Wien*,
    743 F.2d 129 (2d Cir. 1984) ............................................................................... 4

*Lindy Brothers Builders Inc. of Philadelphia v. America Radiator & Standard Sanitary Corp.*,
    540 F.2d 102 (3d Cir. 1976) ............................................................................. 11

*Luciano v. Olsten Corp.*,
    109 F.3d 111 (2d Cir. 1997) ............................................................................... 6

*Maley v. Del Global Techs. Corp.*,
    186 F.Supp.2d 358 (S.D.N.Y. 2002) ................................................................... 8

iii

Mashburn v. National Healthcare, Inc.,
    684 F.Supp. 679 (M.D. Ala. 1988) ................................................... 5

McKittrick v. Gardner,
    378 F.2d 872 (4th Cir. 1967) ...................................................... 10

Mills v. Electric Automobile-Lite Co.,
    396 U.S. 375 (1970) ................................................................ 4

Missouri v. Jenkins,
    491 U.S. 274 (1989) ............................................................... 6

In re NASDAQ Market - Makers Antitrust Litigation,
    187 F.R.D. 465 (S.D.N.Y. 1998) .................................................. 8

Orchano v. Advanced Recovery, Inc.,
    107 F.3d 94 (2d Cir. 1997) ....................................................... 7

Paris v. Metropolitan Life Insurance Co.,
    94 F.Supp. 356 (S.D.N.Y. 1950) ................................................. 10

Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,
    483 U.S. 711, 107 S.Ct. 3078 (1987) ........................................... 7

Perry v. Fleetboston Finance Corp.,
    229 F.R.D. 105 (E.D. Pa. 2005) .................................................. 8

In re Presidential Life Securities,
    857 F.Supp. 331 (S.D.N.Y. 1994) ............................................... 15

In re Prudential Inc. Limited Partnerships Litigation,
    912 F.Supp. 97 (S.D.N.Y. 1996) ................................................. 8

In re Prudential Sec. Inc. Ltd. Partnerships Litigation,
    985 F.Supp. 410 ( S.D.N.Y. 1997) .............................................. 6

In re RJR Nabisco Inc. Sec. Litigation, [1992 Transfer Binder],
    Fed.Sec.L.Rep. (CCH) ¶ 96,984 (S.D.N.Y. Aug. 24, 1992) ................. 13

Robbins v. Koger Properties, Inc.,
    116 F.3d 1441 ( 11th Cir. 1997) ............................................... 10

Roberts v. Texaco Inc.,
    979 F.Supp. 185 (S.D.N.Y. 1997) ............................................... 6

*Sprague v. Ticonic National Bank,*
    307 U.S. 161 (1939) ............................................................................ 4

*Stoetzner v. U.S. Steel Corp.,*
    897 F.2d 115 ........................................................................................ 14

*Troncelliti v. Minolta Corp.,*
    666 F.Supp. 750 (E.D. Mich 1985) .................................................... 15

*Trustees v. Greenough,*
    105 U.S. 527 (1881) ............................................................................ 4

*In re Warner Communications Sec. Litigation,*
    618 F.Supp. 735 (S.D.N.Y.1985),
    aff'd, 798 F.2d 35 (2d Cir. 1986) ...................................................... 13

*In re Washington Public Power Supply System Sec. Litigation,*
    19 F.3d 1291 (9th Cir. 1994) .......................................................... 8, 10

*Yohay v. Alexandria Employees Credit Union, Inc.,*
    827 F.2d 967 (2d Cir. 1987) ................................................................ 5

## STATE CASES

*GMAC Mortgage Corp. v. Stapleton,*
    236 Ill.App.3d 486, 603 N.E.2d 767 .................................................. 15

*New York Life,*
    1995 N.Y.Misc. LEXIS 652 ................................................................ 13

*Sternberg v. Citicorp. Credit Services, Inc.,*
    110 Misc.2d at 808, 442 N.Y.S.2d at 1020
    (Sup. Ct. Nassau County 1981) .......................................................... 13

*Washington Fed. Sav. & Loan Ass'n v. Village Mall Townhouses,*
    90 Misc.2d at 231, 394 N.Y.S.2d at 776 (Sup. Ct. Queens County 1977) ....................... 10

## FEDERAL STATUTES

28 U.S.C. § 1292 ........................................................................................ 12

Federal Rules of Civil Procedure 23 .......................................................... 1

v

The attorneys for plaintiffs and the Settlement Class in this action (Plaintiffs' Co-Lead Settlement Counsel ("Plaintiffs' Counsel")) respectfully submit this application, pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), for an award of attorneys' fees in the amount of $990,000 and attorneys' expenses in the amount of $75,000, and also for class representative enhancements of $15,000 to Mr. White and $5,000 to Ms. Jackson-Daniels.  This application is made in conjunction with the proposed Settlement now before the Court.

## I.  PRELIMINARY STATEMENT

Plaintiffs' Counsel respectfully submit that they have achieved an excellent result in this litigation.  As set forth in greater detail in Plaintiffs' Memorandum In Support of Final Approval of Class Action Settlement, Defendant First Advantage SafeRent, Inc., formerly known as First American Registry, Inc. ("Defendant" or "First Advantage") has agreed to a comprehensive set of programmatic changes that will change – for the better – the way it reports matters in the New York Housing Court, as well as to pay what will be the Congressional statutory minimum damages to all of those individuals as to whom it issued (in Plaintiffs' view) inaccurate tenant credit reports and who returned the simple verification form.   The monetary provisions alone are, to Plaintiffs' Counsel's understanding, the third large FCRA class action settlement in history.

First Advantages' programmatic changes go well beyond the scope of any other set of protections to which any tenant reporting agency has ever instituted, much less agreed to pursuant to Court order.  They are extremely important to tenants who otherwise can be powerless to explain to prospective landlords the meaning of a prior housing court case appearing on their report.  Tenants who were named in a Housing Court case that was eventually dismissed, discontinued or abandoned (which represents a sizable number of cases) will not be

subjected to arbitrary denial of new housing simply because of the filing of the case.  And, the availability of expungement of cases that were baseless or erroneously filed provides an extraordinary benefit to tenants.  Expungement of Housing Court records from a tenant screening bureau database is not available anywhere in the United States, other than Minnesota.  The results of, and settlement achieved in, this litigation are, we respectfully submit, due to the skill and hard work of Plaintiffs' Counsel and constitute a fair and reasonable result under the circumstances.

Plaintiffs' Counsel submits this memorandum in support of their request for an award of fees and expenses.  The requested fee application is singularly reasonable in light of the benefits obtained by the litigation and on behalf of the Class, and the vigorous efforts that Plaintiffs' Counsel undertook to bring about these benefits.  Indeed, Plaintiffs' Counsel request fees and expenses that are only a slight multiplier over their billed time and expenses.  The reasonableness of this application is further underscored by the fact that not a single person has objected to the fee and expense application – a most unusual event in this day and age where professional objectors are virtually ubiquitous and appear to challenge nearly any class action settlement.

The procedural history of this class action, the settlement negotiations, and the risks of establishing liability and damages at trial are detailed in Plaintiffs' Memorandum of Points and Authorities in Support of Request for Final Approval of Class Action Settlement and the Declaration of Seth R. Lesser in Support of Final Approval of Class Action Settlement and of Plaintiffs' Counsel's Application for an Award of Attorneys' Fees and Expenses ("Lesser Decl.").  In addition, attached to the Lesser Award Declaration as exhibits, plaintiffs have

submitted accompanying declarations from all the plaintiffs' counsel involved in this litigation, setting forth their time and expenses.[1]

Finally, this memorandum sets out why the requested awards of $15,000 to Mr. White and $5,000 to Ms. Jackson-Daniels for their services as class representatives in connection with this litigation and Settlement are fair and reasonable and should be approved.

## II.  THE LEGAL STANDARDS GOVERNING THE AWARD OF ATTORNEYS' FEES

As part of the settlement, defendants have agreed to pay, subject to Court approval, $990,000 to Plaintiffs' Counsel for fees and $75,000 for costs and expenses.  As the Supreme Court has noted, in an ideal case, the parties will negotiate and agree upon payment of a definite amount in attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  Of course, even where the parties have reached agreement as to the appropriate amount of the fee, the Court must still review and approve the fee.  However, in the absence of any evidence of collusion and none exists here, a negotiated fee that does not diminish the amount of recovery by the class is entitled to substantial weight.  *See In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 33 F.3d 29 (9th Cir. 1994) (fee request approved where it was negotiated between the parties and was in addition to the benefits provided to the class); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) (encouraging both sides to "understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees").  The reasonableness of the fee requested here is underscored by the fact that it was negotiated at arms-length – *after* the parties

---

[1]  Time detail will be provided should the Court wish to review it.

3

reached substantial agreement on appropriate Class-wide compensatory and injunctive relief .
Lesser Decl. at ¶¶ 9, 24.

The award of counsel fees in class action litigation is based on the long-standing principle
that a party whose efforts produce a benefit for a class of persons is entitled to compensation.
*See Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Trustees v. Greenough*, 105 U.S.
527 (1881); *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Mills v. Electric Auto-Lite Co.*, 396
U.S. 375 (1970); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166 (1939).

Although the clear majority of recent federal and state court cases have, in a typical
"common fund" case, determined the appropriateness of an attorneys' fee award based on a
percentage-of-the-recovery approach, this action is not a traditional common fund case and
Plaintiffs' Counsel respectfully submit that a lodestar/multiplier analysis should be followed here
which was the manner in which the Settlement was negotiated.  *See Koppel v. Wien*, 743 F.2d
129, 131 (2d Cir. 1984) (non-monetary benefits such as deterring future misconduct by
management can support a fee award).

While the Settlement contains not insignificant monetary relief – indeed, relief that
amounts to the third highest settlement in this area of law – the non-monetary achievements of
the Settlement are not monetary which makes analyzing the case solely as a typical common fund
case somewhat misleading.[2]  The value to the Class of First Advantage's programmatic changes

---

[2] Were the case a common fund case the fee request would still be reasonable, being
approximately one-third of the total monetary relief, but such an approach would fail to value the
programmatic relief obtained.  Moreover, it is worth noting that, in litigated cases, the Second
Circuit has rejected the concept that the attorneys' fee in a FCRA must necessarily be
proportional to the recovery:

is impossible to calculate.  *Cf. Quesada v. Thomason*, 850 F.2d 537, 543 (9th Cir. 1988) ("[t]he value to society of successful civil-rights claims cannot be measured by the monetary recovery ... [t]he deterrent effect of these suits, and the publicity brought to the importance of respecting civil rights ... are all nonmonetizable benefits that justify the costs of civil-rights claims that produce small damage awards").  That this relief is significant and, above all, constitutes a favorable resolution of the core issues upon which this case was commenced, cannot be gainsaid. The level of success is best measured by the actual result,  *See, e.g., Mashburn v. Nat'l Healthcare, Inc.,* 684 F. Supp. 679, 691 (M.D. Ala. 1988), and here that result was substantial.

Plaintiffs' Counsel's requested fee will not diminish the benefits obtained for the Class. Defendant has agreed to pay Plaintiffs' Counsel's fee wholly apart from the benefits afforded to the members of the Class.  Thus, unlike the typical common fund case, reducing or even refusing to award a fee will not result in any additional benefit to Class members.  *See In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 33 F.3d 29 (9th Cir. 1994).  Instead, the money would simply revert back to First Advantage from the escrow account in which it is now held.

## A.      Plaintiffs' Counsel's Lodestar

Lodestar is calculated by multiplying the number of hours expended on the entire litigation by a particular attorney by his or her current hourly rate.  *See Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998).  The hourly billing rate to be applied is the hourly rate

---

Proportionality of attorney's fees to the amount recovered is not required in every action brought pursuant to the FCRA.  Since there will rarely be extensive damages in an FCRA action, requiring that attorney's fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act.

*Yohay v. Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 974 (2d Cir. 1987).

that is normally charged in the community where the counsel practices, *i.e.*, the "market rate." *See Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 447 (1983) (Brennan, J., concurring in part, dissenting in part) ("market standards should prevail"); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115-116 (2d Cir. 1997) (the "[t]he 'lodestar' figure should be in line with those [rates] 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'")  In addition, the Supreme Court and other courts have held that the use of *current* rates is proper since such rates more adequately compensate for inflation and loss of use of funds.  *Missouri v. Jenkins*, 491 U.S. 274 (1989).  Here, Plaintiffs' Counsel's current rates are the competitive market hourly rates in New York for cases of this sort – complex consumer class action litigation that involves sophisticated issues and counsel on both sides.  *See In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 985 F.Supp. 410, 416-17 (S.D.N.Y. 1997); *Roberts v. Texaco Inc.*, 979 F.Supp. 185, 194 n. 13 (S.D.N.Y. 1997).  Such rates necessarily reflect the reputation, experience, care, and successful records of Plaintiffs' Counsel.

Plaintiffs' Counsel devoted a total of 1900 hours prosecuting this litigation and negotiating its settlement.  Lesser Decl. at ¶¶ 20-21.  The hours devoted by each firm, and the accompanying time charges are set forth in the Lesser Declaration at page 18, paragraph 28, and supported by Exhibits E, F and G to that Declaration.  As reflected in the Declaration, these efforts have resulted in a total lodestar of $836,318.75.  Lesser Decl. at ¶ 28.  The hours spent on this case are reasonable given the magnitude and complexity of the litigation and the fact that it not only involved seminal issues of Fair Credit reporting litigation but also involved the work-up of the case from inception to trial readiness.

6

Furthermore, in these lodestar figures the time spent in connection with the final approval hearing is not included, nor is the time that the Plaintiffs' Counsel will expend hereafter both in fulfilling their duties to ensure First Advantage's compliance with the terms of the Settlement during its term as well as in responding to inquiries respecting the Settlement (such as from class members).  Lesser Award Decl. at ¶ 28.

More importantly, "[t]he Supreme Court has repeatedly emphasized that the lodestar fee should be presumed reasonable unless some exceptional circumstance justifies deviation."  *E.g.*, *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728, 107 S.Ct. 3078, 3088 (1987); *accord Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 99 (2d Cir. 1997).

As further set forth in the Lesser Award Declaration, the amount of time spent by Plaintiffs' Counsel in prosecuting this action was devoted to, among other things: (i) initial investigation of the factual and legal basis for the claims, drafting and filing complaints in this Court; (ii) briefing and addressing issues raised by Defendants' motions to dismiss and for summary judgment; (iii) conducting a full set of discovery, including the issuance of discovery requests, reviewing documents, being involved in 17 depositions and addressing matters of dispute concerning discovery with the Court, including contentious hearings regarding motions to strike and evidence; (iv) contacting and obtaining experts and expert reports; (v) moving for class certification, albeit unsuccessfully, and, after certification was denied, obtaining an additional plaintiff to intervene; (vi) preparing pre-trial materials including trial designations, drafting jury instructions (mostly *de novo* inasmuch as precedents do not exist for the issues that this case addressed); (vii) mediating this case using a highly respected national mediator; and (viii) arduously crafting an MOU and a Settlement Agreement.  Lesser Decl. at ¶¶ 3-10.

7

**B.**    **Plaintiffs' Counsel's Requested Fees Represent a Most Modest Lodestar Multiplier**

The reasonableness of Plaintiffs' Counsel's requested attorneys' fees is reflected by the

fact they are seeking a very small multiplier of 1.2 on their time, notwithstanding the success in

this litigation represented by this Settlement.[3]   The lodestar/multiplier method involves

calculating the number of hours spent multiplied by counsel's respective hourly rates and then

adjusting the lodestar for contingency, complexity, risks associated with the litigation and other

factors by applying a multiplier to the lodestar.   *In re Washington Public Power Supply System*

*Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994).   As Judge Pollack noted in *In re Prudential Inc.*

*Limited Partnerships Litigation*, 912 F. Supp. 97 (S.D.N.Y. 1996),

> The Court has broad discretion which should be appropriately exercised to
> adjust the lodestar to take into account such factors as (i) the contingent nature of the
> expected compensation for their services; (ii) the consequent risk of non-payment
> *viewed as of the time of filing the suit*; (iii) the quality of representation; (iv) the
> results achieved.  In high risk...cases such as these, courts normally apply a multiplier
> to the lodestar to adjust for the foregoing considerations in arriving at the total fee to
> be awarded.

*Id.* at 102 (emphasis supplied).  *See also In re NASDAQ Market - Makers Antitrust Litig.*, 187

F.R.D. 465, 489 (S.D.N.Y. 1998)  (an adjustment of the lodestar "takes into account the social

and economic value of class actions, and the need to encourage experienced and able counsel to

---

[3] *Compare, e.g.*, *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524
(E.D.N.Y. 2003), *aff'd* 396 F.3d 96 (2d Cir 2005) (approving attorneys' fees of 3.5 times the
lodestar); *In re Bristol Myers Squibb Secs Litig.*, 361 F. Supp. 2d 229, 237 (S.D.N.Y.
2005)(approving a 2.29 multiplier); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371
(S.D.N.Y. 2002) (approving a 4.65 multiplier).  The multiplier here is in line with at least one
other FCRA settlement, *Perry v. Fleetboston Fin. Corp.*, 229 F.R.D. 105, 123 (E.D. Pa. 2005)
((1.5 multiplier in FCRA class action settlement).

undertake such litigation"), *citing Alpine Pharmacy v. Chas. Pfizer & Co.*, 481 F.2d 1045, 1050 (2d Cir. 1973).

Here, an award of $990,000 (plus approximately a few thousand in interest that has been earned on that amount since the time the Settlement Agreement was finalized and monies put into an escrow bearing account) represents of a multiplier of just 1.2.  That this litigation posed significant risk of non-payment is clear.   The primary federal statute under which the case was brought – the Fair Credit Reporting Act — has never been held by any court to prohibit on a class action basis (or indeed on any basis) conduct similar to defendant's in this action.  The same was true under the New York analogue.  Indeed, while Plaintiffs' Counsel believed the scope of Defendant's activities were actionable under the statutes, the Court may recall that it itself expressed a question as to whether tenant reports were covered by their reach.  Moreover, almost no class actions under the FCRA have ever succeeded, the matter of obtaining injunctive relief was always in doubt given the Fifth Circuit's *Washington* opinion (with which this Court ultimately agreed), and obtaining statutory damages would have required a showing of "willfulness" under the FCRA, a statutory level of proof whose parameters are unclear and certainly are not low.  *See also* Lesser Decl. at ¶ 5.  Given these risks and difficulties that the litigation posed – and were known at the outset – Plaintiffs' Counsel's request represents, we submit, a most reasonable request for services rendered to the Class by their counsel.

**C.      Contingent Nature Of The Fee And Time And Labor Spent**

The fee request is further reasonable given the fact that the work undertaken by the law firms was entirely on a contingent basis.  It is well-established that an attorney is entitled to a larger fee when that fee is contingent than when it is fixed on a time or contractual basis.

9

It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*In re Washington Public Power Supply System Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994);

*see also Paris v. Metropolitan Life Ins. Co.*, 94 F. Supp. 356, 358 (S.D.N.Y. 1950) ("[t]he fact

that petitioners' compensation was contingent upon recovery must be taken into account").

When Plaintiffs' Counsel undertook to prosecute Plaintiff's claims, it was with the

knowledge that they might have to spend substantial time and resources in the litigation of these

claims without any assurance of achieving any recovery at all given the legal risks outlined just

above.

Even the most vigorous and diligent efforts by counsel do not guarantee victory at trial or

a settlement. There are numerous cases prosecuted on a contingent basis where Plaintiffs'

Counsel have spent thousands of hours and received no payment. *See*, *e.g.*, *Robbins v. Koger*

*Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (verdict of $81 million for plaintiffs against an

accounting firm reversed on loss causation grounds and judgment entered for defendant); *see*

*also*, *Washington Fed.,* 90 Misc. 2d at 231, 394 N.Y.S.2d at 776.

The effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing of his services. Charges on the basis of a minimal hourly rate are surely inappropriate for a lawyer who has performed creditably when payment of any fee is so uncertain.

*McKittrick v. Gardner*, 378 F.2d 872, 875 (4th Cir. 1967). Unlike counsel for defendants,

Plaintiffs' Counsel have not been compensated for their time and effort during the course of this

litigation.  It would be correct to observe that while defense counsel are generally paid *per diem*, plaintiffs' counsel are paid "perhaps."

All of the services rendered by Plaintiffs' Counsel required a level of expertise and the ability to provide services in demanding circumstances against a sophisticated corporate defendant.  There can be little question in the present case that plaintiffs' counsel faced risk throughout this litigation.  A number of difficult issues, the adverse resolution of some of which could have doomed the successful prosecution of the action, were present here; indeed, on some of the core issues, Plaintiffs lost motions, but by dint of their continued pressing the case and showing their unquestionable intention to litigate to a successful result – be it on a class or individual by individual basis – Plaintiffs' Counsel obtained the relief that had been sought from the very beginning.  In short, Plaintiffs' Counsel accepted the risk that they could prosecute this complex case for years, yet ultimately receive nothing for their efforts.  Having taken this risk, and succeeding despite them, counsel should be fairly compensated.  Most certainly, a multiplier of 1.2 is, at the very least, a reasonable compensation under the circumstances.

D.     **Standing And Ability of Plaintiffs' And Defendant's Counsel**

The result achieved and the quality of the services provided are also important factors to be considered in determining the amount of reasonable attorneys' fees under a lodestar/multiplier analysis.  *See, e.g., Hensley*, 461 U.S. at 436 ("most critical factor is the degree of success obtained"); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 456 (10 Cir. 1988); *Lindy Bros. Builders Inc. of Philadelphia v. Am. Radiator & Std. Sanitary* Corp., 540 F.2d 102, 112, 117-18 (3rd Cir. 1976).  To reiterate, Plaintiffs' Counsel believe the results they achieved are commendable under the circumstances.

11

In addition, Plaintiffs' Counsel, respectfully submit that they conducted themselves in this action in a professional, diligent manner.  There was little duplication of effort and the bulk of the work was performed by a small number of attorneys fully familiar with the factual and legal issues presented by this litigation.  Indeed, the Court may recall that rather than unnecessarily engage in motion practice and briefing, when Defendant moved under 28 U.S.C. § 1292(b) for an interlocutory appeal of the Court's order denying its motion to dismiss (*see* Docket No. 22), Plaintiffs' Counsel responded with a letter rather than – as they certainly could have done – a full brief.

Plaintiffs' Counsel, moreover, were able to work efficiently in this case given the separate experiences each brought to the table.  Mr. Fishman is one of the best known tenant practitioners in New York and has a reputation for experience and excellence in that venue.  Additionally, he also has extensive experience and a national reputation litigating FCRA cases before this Court and the Court of Appeals.  Mr. Lesser and his colleague at the Locks Law Firm, Mr. Bell, have national reputations for their experience and successful prosecution of complex class action litigation and have also won significant victories in a number of cases – like the present – where claims are novel.  Finally, Ms. Canan and the AARP Foundation added the weight and reputation of one of the country's leading defenders of consumers and the elderly.  *See* Exhibits 1 - 3 to Lesser Decl.   As set forth above, the services rendered by Plaintiffs' Counsel were rendered efficiently and expeditiously, reflecting their knowledge and practical experience in litigating claims of this nature.  Their expertise and demonstrated willingness to take the Defendant to trial until a successful result was obtained was a primary factor, we submit, in bringing about the expeditious resolution of this litigation on extremely favorable terms for the Class.

12

The quality of opposing counsel is also important in evaluating the quality of the services rendered by plaintiffs' counsel. *See, e.g., In re Warner Communications Sec. Litig*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2d Cir. 1986); *In re King Resources Co. Sec. Litig.*, 420 F. Supp. 610, 634 (D. Colo. 1976); *Arenson v. Board of Trade*, 372 F. Supp. 1349, 1351 (N.D. Ill. 1974). Defendants here were vigorously represented by a national law firm, Bryan Cave LLP, which showed no lack of tenacity in its client's defense. The ability of Plaintiffs' Counsel to obtain such favorable results in the face of formidable and dogged legal opposition further evidences the quality of their work.

**E.    Public Policy Considerations Support the Reasonableness of the Requested Fees**

Important public policy considerations also support approval of the requested fees. In considering attorneys' fees, courts are mindful that such awards serve the dual purpose of encouraging representatives acting as "private attorneys' general," to seek redress for damages to entire classes of persons and discouraging future misconduct of a similar nature. *See Dolgow v. Anderson*, 43 F.R.D. 472, 487 (E.D.N.Y. 1968), *rev'd on other grounds*, 438 F.2d 825 (2d Cir. 1970) ("Every successful suit duly rewarded encourages other suits to redress misconduct and by the same token discourages misconduct which would occasion suit.") (citations omitted). *See also In re RJR Nabisco Inc. Sec. Litig.*, [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,984, at 94,268 (S.D.N.Y. Aug. 24, 1992) ("The prospect of handsome compensation is held out as an inducement to encourage lawyers to bring such suits") (quoting *Dolgow*, 43 F.R.D. at 494); *New York Life*, 1995 N.Y. Misc. LEXIS 652, at *93; *Sternberg*, 110 Misc. 2d at 808, 442 N.Y.S.2d at 1020.

13

Patently, this has been such a litigation from the beginning and this consideration should apply with considerable force in this case.

**F.      The Reaction of the Class Confirms that the Requested Fees are Reasonable**

Finally, and perhaps not least, *not a single* Class member has objected to Plaintiffs' Counsel's fees and expenses in this action, which demonstrate their reasonableness.  The notice, particularly in light of the revision setting forth the fee and cost request, as the Court had the parties include, told the Class that plaintiffs' counsel would apply for the fee and expense award.  Yet, even though it is rare that any class action goes by without multiple objections to fee and cost requests (quite often from "professional objectors") not one was received here.  This factor alone should support the requested fees and expenses request, and, accordingly, the Court should approve the requested fee application.[4]

### III.  PLAINTIFFS' COUNSEL SHOULD BE REIMBURSED FOR THEIR OUT-OF-POCKET EXPENSES

Plaintiffs' Counsel have incurred out-of-pocket costs and expenses in an aggregate amount of $80,084.18 in prosecuting this litigation on behalf of the class.  *See* Lesser Decl. at ¶ 29.  These expenses are categorized in the declarations submitted to the Court herewith.

Plaintiffs' Counsel is entitled to reimbursement for various standard out-of-pocket expenses that an attorney would ordinarily bill a fee paying client.  *See, e.g., Harris v.*

---

[4] This overwhelming acceptance of the Settlement by Class members is convincing evidence of its fairness and adequacy.  *See Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313-1314 (3d Cir. 1993); *General Pub. Utils.*, [1983-1984 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 99,556 at 97,231 (D.N.J. Nov. 16, 1983)  ("The lack of objection[s] from the members of the class is one of the most important reasons leading the court to the conclusion that the settlement should be approved"); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) ("only" 29 objections in 281 member class "strongly favors settlement").

*Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted).  These expenses include discovery costs (including copying and deposition transcripts), plaintiffs' expert consultants, express mail and delivery services, travel and lodging, computerized research, all of which are separately totaled in counsels' declarations.  *Id.*  As the categorization in the fee declarations shows, these expenses here are reasonable.

Indeed, given the costs incurred since the time the parties agreed in principal to settle the case, it turns out that Plaintiffs' Counsel's agreed-upon request for $75,000 will be less than their actual accrued cost of $80,084.18.

For all these reasons, Plaintiffs' Counsel respectfully submits that the expense request should be approved.

## IV.    THE TWO CLASS REPRESENTATIVE SHOULD BE AWARDED THEIR REQUESTED ENHANCEMENTS

It is well-accepted that individuals who step forward in class actions that resolve successfully can be entitled to obtain an award beyond that of the other class members for their willingness to serve as class representatives.[5]  While the range of multipliers in cases can range

---

[5] *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (incentive award of $25,000 for named plaintiff); *In re Immunex Sec. Litig.*, 864 F. Supp. 142 (W.D. Wash. 1994) (11 named plaintiffs shared $25,000 paid); *In re Presidential Life Securities*, 857 F. Supp. 331, 333, 337 (S.D.N.Y. 1994) (five plaintiffs shared $10,000 taken out of attorney fees); *In re Dun & Bradstreet Credit Services Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) (various incentive awards to named plaintiffs; highest individual award $55,000); *see also In re GNC Shareholder Litig.: All Actions*, 668 F. Supp. 450, 451 (W.D. Pa. 1987); *Troncelliti v. Minolta Corp*., 666 F. Supp. 750, 752 (D. Md. 1987); *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 709-10 (E.D. Mich. 1985); *GMAC Mortgage Corp. v. Stapleton*, 236 Ill. App. 3d 486, 603 N.E.2d 767, 776 (1992); C. Krislov, Scrutiny of the Bounty: Incentive Awards for Plaintiffs in Class Litigation, 78 Ill. B.J. 286 (June 1990).  *Cf. Ingram v. The Coca-Cola Co.*, 200 F.R.D.685, 694 (N.D. Ga. 2001) (approving incentive awards of $300,000 to class representatives in lieu of

from the modest to the quite substantial (*see* citations n.5, above), in this case the requested awards of $15,000 for Mr. White and $5,000 for Ms. Jackson-Daniels are reasonable and should be awarded.

Mr. White's role in this litigation was quite substantial.  Not only did he step forward as the class representative, but Defendant's attack on his adequacy was substantial, impugning his motives, his honesty, and his professional affiliations over the years.  He faced interviews in the press and saw his credibility, as an attorney, under attack.  He sat not for one, but for two, depositions, and had to answer questions regarding his financial and medical history.  He agreed to give up his own, individual claims against Defendant in order to serve as class representative. While, ultimately, the Court determined that he was not a proper representative because of standing issues, his dedication to the lawsuit cannot be questioned and a $15,000 enhancement to him is, counsel submits, under the circumstances reasonable.

Ms. Jackson-Daniels asks for a $5,000 enhancement, an amount in line with those often awarded to someone who steps forward as a class representative in class actions these days.  In her case, this amount is particularly reasonable given the fact that she agreed to step forward as a class representative in a publicized class action at the very time that she was in the housing market and seeking to obtain an apartment notwithstanding an adverse credit report of the Defendant's.  It was certainly not inconceivable that doing so could have redounded to her further disadvantage by causing her to lose an apartment she was seeking, yet she was willing to serve to hope to accomplish a greater good for others.  Such service should be rewarded and a reward of $5,000 would, Plaintiffs' counsel submits, be reasonable under the circumstances.

---

compensation from settlement in highly-publicized discrimination lawsuit).

16

## V.   CONCLUSION

For all of the reasons set forth above, Plaintiffs' Counsel respectfully request the Court to

approve both the Settlement and the Fee Application in all respects.

Dated: New York, New York
      June 1, 2006

Respectfully submitted,


s/ Seth R. Lesser
LOCKS LAW FIRM, PLLC
Seth R. Lesser (SRL 5560)
Andrew P. Bell (APB 1309)
110 East 55th Street
New York, NY 10022
(212) 838 3333
www.lockslaw.com

FISHMAN & NEIL, LLP
James B. Fishman (JBF 8998)
305 Broadway
Suite 900
New York, NY  10007
(212) 897 5840
www.tenantslaw.net
www.MyFairCredit.com

AARP FOUNDATION
Stacy J. Canan (SJC 4745)
601 E Street, N.W.
Washington, D.C.  20049
(202) 434 6045
www.aarp.org/foundation

Plaintiffs' Co-Lead Settlement Counsel