UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ADAM WHITE, et ano.,

                Plaintiffs,

    -against-                                04 Civ. 1611 (LAK)

FIRST AMERICAN REGISTRY, INC., et ano.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge*.

        Plaintiffs brought this putative class action against defendants First American Registry and First Advantage SafeRent, Inc. for violating the Fair Credit Reporting Act[1] ("FCRA"), the New York Fair Credit Reporting Act[2] ("NYFCRA"), and Section 349 of the New York General Business Law. They contend that defendants lack reasonable procedures to assure the maximum possible accuracy of the consumer reports they furnish to their customers, which, in this case, are New York City landlords. The matter now is before the Court on plaintiffs' motions for (1) class certification and approval of a settlement and (2) an award of attorneys' fees and other relief.

*Class Certification*

        The parties agree that the following class should be certified:

---

[1] 15 U.S.C. §§ 1681 *et seq.*

[2] N.Y. GEN. BUS. LAW. §§ 380 to 380-t (McKinney 1996 & Supp. 2005).

2

>All persons who are listed, or who were listed from February 26, 2001 to March 16, 2006 in Defendant First Advantage SafeRent, Inc.'s RegistryCheck™ database as a tenant, occupant, respondent, defendant or other similar categorization in a proceeding commenced in the Civil Court of the City of New York, Housing Part. Excluded from the Class is Defendant, any entity in which defendant has a controlling interest, and any of its subsidiaries, affiliates, and officers, directors, employees and agents as well as any person or entity who is named in any such proceeding as a landlord.

Although I previously denied certification on the ground that plaintiff White was not an adequate representative, a new plaintiff has been joined. I now am satisfied that each of the requirements of Rule 23 is satisfied and so certify the proposed class.

*The Settlement*

This lawsuit arises by reason of the nature of defendants' business, which consists of selling landlords the opportunity to consult a list of individuals who have been involved in landlord-tenant litigation. As defendants doubtless well understand,[3] risk averse landlords are all too willing to use defendants' product as a blacklist, refusing to rent to anyone whose name appears on it regardless of whether the existence of a litigation history in fact evidences characteristics that would make one an undesirable tenant. Thus, defendants have seized upon the ready and cheap availability of electronic records to create and market a product that can be, and probably is, used to victimize blameless individuals. The problem is compounded by the fact that the information available to defendants from the New York City Housing Court ("NYCHC") is sketchy in the best of cases and inaccurate and incomplete in the worst. Any failure by defendants to ensure that the information they provide is complete, accurate, and fair heightens the concern – and there has been ample reason for heightened concern.

---

[3] The use of the name First Advantage SafeRent above evidences this understanding.

Against that background, the parties propose to settle the case for both programmatic and monetary relief.

The programmatic relief would include principally the following:

- Defendants' reports of summary non-payment proceedings indicating "Case Filed" in which there has been no disposition for 12 months as reported by the NYCHC would contain a note indicating that there has been no disposition within 12 months and that proceedings in which no disposition has been obtained within 1 year after a default are subject to dismissal.

- Defendants' reports would contain a note indicating that the filing of a case does "not mean that an applicant was evicted from an apartment or was found to owe rent. Lawsuits may be filed in error or lack merit."

- Defendants would improve their customer service in a variety of ways.

On the monetary side, the settlement proposes creation of a Class Settlement Fund of $1,900,000 and payment by defendants' insurer of up to $1,065,000 in fees and expenses to plaintiffs' attorneys. Settlement expenses and proposed payments to the two named plaintiffs totaling $20,000 would be paid out of the $1.9 million, with the balance applied to pay each class member who submits a timely and proper claim $100 or, if the total of such claims exceeds the available balance, a *pro rata* reduced amount. Any part of the $1.9 million left after paying the settlement expenses, the named plaintiffs, and the individual class members would be donated to appropriate governmental and/or charitable entities "to further the goal of increasing awareness of tenant screening and the duties and obligations under" pertinent laws.

A court confronted with a proposed class action settlement is called upon to determine

4

whether the settlement is "fair, adequate, and reasonable" to class members,[4] a standard that includes both procedural and substantive components.[5] Assessing procedural fairness requires attention to such matters as the negotiation history and adequacy of class representation. Factors pertinent to substantive fairness are included among those set out in *City of Detroit v. Grinnell Corp.*:[6]

> "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."[7]

Moreover, the settlement court must assess the fairness of a proposed settlement in a practical way on the basis of reasonably available information. It should not attempt to approximate a litigated determination of the merits of the case[8] lest the process of determining whether to approve a settlement simply substitute one complex, time consuming and expensive litigation for another.

I am troubled by this settlement. It leaves defendants' business model essentially intact. While there will be very modest improvements, the potential for abuse quite plainly remains.

---

[4] *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 473 (S.D.N.Y. 1998).

[5] *E.g., Malchman v. Davis,* 706 F.2d 426, 433 (2d Cir.1983); *see D'Amato v. Deutsche Bank,* 236 F.3d 78, 85-86 (2d Cir.2001).

[6] 495 F.2d 448 (2d Cir.1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir.2000).

[7] *Id.* at 463.

[8] *See West Virginia v. Chas. Pfizer & Co.,* 440 F.2d 1079, 1085 (2d Cir.), cert. denied, 404 U.S. 871 (1971).

5

The fact that defendants are willing, indeed anxious, to engage in activities that are bound to harm innocent people is distressing. Moreover, while this litigation has been hard-fought, and I do not impugn anyone's motives, the structure of the deal does not put my mind entirely at ease. If approved as proposed, plaintiffs' counsel would receive over $1 million. The two named plaintiffs would receive a total of $20,000 above and beyond anything to which they would be entitled as class members. Individual class members, for all practical purposes, would receive nothing of substantial monetary value. Defendants would be rid of a troublesome and embarrassing lawsuit for programmatic consideration that costs them little and economic consideration that at best would be a small multiple of the legal fees required to litigate the case to conclusion.

Nevertheless, substantial factors point in favor of approval. To begin with, I acknowledge that my discomfort stems in part from defendants' business model, which in and of itself is not unlawful, however distasteful and deserving of legislative attention it may be. Notice has been widely disseminated, yet there have been only 21 opt-outs from a class of over 35,000 people. There has been only one objector. It is not clear that plaintiffs could obtain greater programmatic relief even if they prevailed. The litigation would be difficult and costly.

Accordingly, in all the circumstances, I have concluded that the basic terms of the settlement, as amended most recently, should be approved. I do not, however, see any reason to approve the additional payments to the individual plaintiffs. This is especially true of Mr. White, who was rejected as an adequate class representative. Indeed, approving these proposed payments, in the context of this case, would create an incentive for other representatives to act in a manner inconsistent with the interests of other classes.

6

*Attorneys' Fees*

Plaintiffs' counsel seek an award of $990,000 in attorneys' fees and $75,000 in expenses against total expenses of $80,084.18.

Counsel asserts that they devoted 1,900 hours to this case through the filing of the initial motion for approval of the settlement. They claim a lodestar of $836,318.75. I accept that as reasonable. I see no reason for a multiplier. In addition, I am aware that plaintiffs' counsel subsequently have devoted additional efforts to the matter in seeking approval of the settlement, which in my judgment are worth an additional $25,000.

*Conclusion*

Plaintiffs' motion to approve the settlement as amended [docket item 148] is granted save that the proposed payments to the individual plaintiffs are not approved. Plaintiffs' motion for an award of attorneys' fees and expenses [docket item 149] is granted to the extent that they shall recover attorneys' fees in the amount of $861,318.75 plus expenses in the amount of $75,000 for a total of $936,318.75.

SO ORDERED.

Dated:     March 7, 2007

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)