UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ADAM WHITE, individually and on behalf of
all others similarly situated,

                    04 CV 1611 (LAK)

             Plaintiff,

   -against-

FIRST AMERICAN REGISTRY, INC.,
n/k/a FIRST ADVANTAGE SAFERENT, INC.,

            Defendant.

------------------------------------------------------------x

## NOTICE OF MOTION FOR AN ORDER
## APPROVING DISTRIBUTION OF *CY PRES* FUNDS

**PLEASE TAKE NOTICE**, that upon the annexed declaration of James B. Fishman, dated November 25, 2008, with exhibits, annexed hereto, the annexed joint declaration of April Newbauer and Raun Rassmussen dated November 19, 2008,  the plaintiffs' memorandum of law and upon all of the papers and proceedings heretofore had herein, a Motion will be made before the Hon. Lewis A. Kaplan, United States District Court for the Southern District of New York at the Courthouse located at 500 Pearl Street, Courtroom 12D New York, New York on the     day of         , 200  , at ___ M that day, or as soon thereafter as counsel can be heard, for an order, approving the plaintiffs' proposal for distribution of *cy pres* funds provided in the settlement agreement between the parties, and granting such other relief as may be just.

Dated:  New York, New York
        November 25, 2008

Yours, etc.,

*James B. Fishman*, rak
FISHMAN & NEIL, LLP
James B. Fishman (JBF 8998)
305 Broadway
Suite 900
New York, NY  10007
(212) 897 5840

LOCKS LAW FIRM, PLLC
Andrew P. Bell (APB 1309)
110 East 55th Street
New York, NY 10022
(212) 838 3333

KLAFTER OLSEN & LESSER
Seth R. Lesser (SRL 5560)
1311 Mamaroneck Avenue
Suite 220
White Plains, NY 10605
914 997 5656

AARP FOUNDATION
Stacy J. Canan (SJC 4745)
601 E Street NW
Washington, D.C.  20049
(202) 434 6045

Plaintiffs' Co-Lead Counsel

To: Charles Newman
    Bryan Cave
    211 North Broadway
    Suite 3600
    St. Louis, MO 63102

    Suzanne Berger
    Bryan Cave
    1290 Sixth Avenue
    New York, NY 10104

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
ADAM WHITE, et ano.,

      Plaintiffs,

   -against-                             **04 Civ. 1611 (LAK)**

FIRST AMERICAN REGISTRY INC, et ano.,

      Defendants.
--------------------------------------------------------

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR APPLICATION FOR DISTRIBUTION OF *CY PRES* FUNDS

FISHMAN & NEIL, LLP
James B. Fishman
305 Broadway
Suite 900
New York, NY 10007
(212) 897 5840

KLAFTER OLSEN & LESSER
Seth R. Lesser
1311 Mamaroneck Avenue
Suite 220
White Plains, NY 10605
914 997 5656

LOCKS LAW FIRM, PLLC
Andrew P. Bell
110 East 55th Street
New York, NY 10022
(212) 838 3333

AARP FOUNDATION
Stacy J. Canan
601 E Street, N.W.
Washington, D.C. 20049
(202) 434 6045

Plaintiffs' Co-Lead Counsel

# TABLE OF CONTENTS

Table of Authorities

A.   Introduction                                                                  1

B.   Background of this Litigation                                      2

C.   The Settlement                                                           4

D.   The Proposed Plan for Distribution of the *Cy Pres* Fund        5

ARGUMENT

I. THE PROPOSED PLAN PROVIDES FOR EDUCATIONAL,
TRAINING AND LITIGATION TO SUPPORT AND ACHIEVE
THE BENEFITS OF THE CLASS SETTLEMENT                        8

    1. Citywide Task Force on Housing Court                      9

    2. Neighborhood Economic Development Advocacy Project      9

    3. The Legal Aid Society and Legal Services NYC            10

II. THE COURT SHOULD APPROVE THE PLAINTIFFS'
PROPOSED PLAN IN ITS ENTIRETY                                    12

    1. Nature and Purpose of *Cy Pres*                              13

    2. *Cy Pres* Awards to Legal Services Organizations          14

III. THE PLAINTIFFS' PROPOSED PLAN IS CONSISTENT
WITH THE SETTLEMENT AGREEMENT'S *CY PRES* PROVISION.
IF IT IS NOT, THE COURT IS EMPOWERED TO AMEND THE
SETTLEMENT ORDER IN A MANNER CONSISTENT WITH
THE OBJECTIVES OF THIS ACTION                                      16

CONCLUSION                                                                 21

I

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Chicago Park Dist.*,
79-CV-2242, 1989 WL 152849 (N.D. Ill. Nov. 22, 1989)          18

*Bolden v. Penn. State Police*,
73 F.R.D. 370 (E.D. Pa. 1976)          18

*Dennis v. BEH-1 LLC and Experian Information Solutions, Inc.*
520 F.3d 1066 (9th Cir. 2008          11,12

*Fears v. Wilhelmina Model Agency*,
2007 WL 1944343 (S.D.N.Y.)          16

*In re Motorsports Merchandise Antitrust Litigation*,
160 F. Supp. 2d 1392 (ND Ga. 2001)          14

*Jones v. National Distillers*,
56F. Supp. 2d 355 (S.D.N.Y. 1999)          15

*Luevano v. Campbell*,
93 F.R.D. 68 (D.D.C. 1981)          18

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F. 3d 423 (2d Cir. 2007)          14

*New York State Assoc. for Retarded Children, Inc. v. Carey*,
706 F.2d 956 (2d Cir. 1983)          19

*Patterson v. Newspaper & Mail Deliverers' Union*,
13 F.3d 33 (2d Cir. 1993)          19

*Plotz v. NYAT Maintenance Corp.*, 2006 U.S. Dist. LEXUS 4799,
 (S.D.N.Y. 2006)          15

*Superior Beverage Co. v. Owens-Illinois, Inc.*,
827 F. Supp. 477 (N.D. Ill. 1993)          14

*United States v. Broadcast Music, Inc.,*
275 F.3d 168 (2d Cir. 2001)                                           18,19

*Wyatt By and Through Rawlins v. King*,
793 F. Supp. 1058 (M.D. Ala. 1992)                                    18


**Statutes and Court Rules**

15 USC§ 1681 et seq.                                                   3

15 USC § 1681e(b)                                                      3

FRCP 12(b)(6)                                                          4

FRCP 60(b)(5)                                                          17

GBL § 380 et seq.                                                      3

GBL § 380-j(e)                                                         3

GBL § 349                                                              3


**Other Materials**

H. Newberg, Newberg on Class actions (3d ed. 1992)                    13

Herbert B. Newberg & Alba Conte,
Newberg on Class Actions (4th ed. 2002)                             14

New York State Bar Association Manual on Cy pres
For Legal Services  (Special Committee on Funding for
Civil Legal Services) (January 2007**)**

Press Release, Office of the New York State Attorney General
Andrew Cuomo, "Domestic Violence, Breast Cancer Awareness
Groups among Recipients of Anti-trust Settlement Funds, Funds
Derived From Settlement of Price-Fixing Allegations Involving
Women's Shoes" (October 26, 2001), *Available at*,
http://www.oag.state.ny.us/press/2001/oct/oct26a_01.html             16

## A.    Introduction

This memorandum is offered in support of the plaintiffs' motion for an order approving the plaintiff's plan for distribution of the *cy pres* fund, in the amount of ONE MILLION TWO HUNDRED TWENTY FOUR THOUSAND  FIVE HUNDRED FORTY SIX DOLLARS AND NINETY FOUR CENTS ($1,224,546.94), which remains after distribution of payments to qualified class members and deduction of approved administrative expenses.[1]  The plaintiffs have proposed a comprehensive plan under which such funds would be administered by the New York Bar Foundation, the charitable arm of the New York State Bar Association, for distribution to four non-profit tenant and consumer advocacy organizations, as well as the bar association.

The plan proves for a variety of educational programs for tenants, landlords and attorneys concerning tenant screening issues generally and, in particular, pertaining to methods of obtaining the benefits achieved in the settlement of this action.  The plan also includes funding for legal services organizations to support litigation by tenants, where it is necessary to obtain class benefits under the settlement, such as expungement of eviction case data from the defendant's database.

---

[1]This sum includes interest that has accrued on the fund,  since it was first created in 2007, in the amount of $148,840.84.

The defendants have advised that they do not oppose distribution of the funds to any of the recipients listed in the plaintiff's proposal.  Nor do the defendants appear to object to the distribution of the funds to such organizations to the extent they are used  for educational purposes.  The defendants have objected to that portion of the plan which provides funding of possible litigation by tenants against landlords as a means of achieving the benefits of the class settlement.  Accordingly, the primary issue for the Court to determine is whether any of the *cy pres* funds may be used to fund litigation where it is necessary to obtain those benefits, as the balance of the plaintiff's proposal is apparently not opposed by the defendant.

The plaintiff's plan is fully consistent with the objectives of the underlying action as well as with Second Circuit precedent on *cy pres* awards.  The plan also promotes, and helps tenants to obtain, the expungement benefits of the settlement agreement in this action.  The Court has ample authority to approve the plaintiff's proposed plan for the distribution of *cy pres* funds and such relief should be granted.

## B.   Background of this Litigation

The plaintiff, Adam White, brought this action in February, 2004 in order to address a widespread and pernicious problem that had been identified concerning the defendant's preparation and sale of Registry Check ™ Reports (the "Reports").  The defendant's business involves purchasing data, often in

electronic form, generated by various Court systems around the country that handle landlord/tenant eviction cases.  Since at least 1994 the defendant has purchased such data about New York City Housing Court ("Housing court") cases from the New York State Unified Court System ("UCS").  The defendant uses that data, as well as data from other court systems, to create Reports which it sells to landlords who wish to use them to evaluate prospective tenants.  The Reports are "credit reports" and the defendant is a "credit reporting agency," both within the meaning of the Fair Credit Report Act, ("FCRA") (15 USC§ 1681 et seq.) and the New York Fair Credit Reporting Act ("NYFCRA") (GBL § 380 et seq.)

The second amended complaint (Exhibit A) alleged that the defendant violated, and had continued to violate, the FCRA, the NYFCRA and the New York Deceptive Practices Act (GBL § 349) by routinely failing to include the disposition of eviction cases it included in the Reports, even though such disposition data had been routinely reported to it by the UCS and that it therefore failed to maintain reasonable procedures to assure maximum possible accuracy of the Reports, as required by 15 USC § 1681e(b) and GBL § 380-j(e).  The complaint further alleged that the defendant's failure to include such disposition data in its Reports rendered them inaccurate, misleading and incomplete and therefore violative of federal and state credit reporting statutes.  Finally, the complaint alleged that the defendant's failure to include disposition data in the Reports,

while representing otherwise to the general public, constituted a deceptive

business practice in violation of New York General Business Law § 349.

In June 2004 the Court denied the defendant's motion, brought pursuant to

FRCP 12(b)(6), to dismiss the complaint.  Thereafter, in July 2006 the Court

denied the defendant's motion for summary judgment as well as the plaintiff's

motion for class certification.   Thereafter, as set forth below, the parties reached

a settlement which provided for certification of a class as well as various forms of

relief to the class.

**C.      The Settlement**

In January 2006, after conducting extensive discovery and document

production, the parties, with the assistance of a mediator, reached a proposed

settlement agreement.  (the "Initial Settlement Agreement") (Exhibit B).  The

primary benefits to the class in that agreement included expungement of Housing

Court cases found to be baseless or which had been brought in error, an

injunction mandating the accurate reporting of case dispositions in the

defendant's Reports and the payment of $2,000,000.00 as class damages (with

payments to individual class members of $100.00) and administrative expenses.

(the "Settlement Fund").

On March 16, 2006 the Court signed an order provisionally certifying the

class and directing the service of notice to the class, consisting of the

approximately 35,000 individuals who had been the subject of a Report during the relevant time period, and scheduling a fairness hearing.[2]

On June 16, 2006 the Court conducted a fairness hearing at which time it expressed dissatisfaction with various provisions of the Initial Settlement Agreement and declined to approve it at that time.  With the assistance of the mediator, the parties entered renewed negotiations and subsequently submitted an amended settlement agreement which dramatically narrowed the scope of the release and extensively expanded the categories and numbers of Housing Court cases subject to expungement from the defendant's database.  (the "Amended Settlement Agreement") (Attached as Exhibit C)

On March 7, 2007 the Court issued an order certifying the class and approving the Amended Settlement Agreement.  (Exhibit D).  That Order further provided for an award of attorney's fees to the plaintiff's counsel, separate and apart from the settlement fund.

**D.  The Proposed Plan for Distribution of the *Cy Pres* Fund**

Forty-one hundred eligible class members received payment of $100.00 each from the total class settlement, for a total distribution to the class of

---

[2] Notice was made by First Class Mail, advertisements in several newspapers, in posters placed in all New York City Legal Aid Society and Legal Services offices and via website created for this case.

$410,000.00.   At present, the settlement fund, after deduction of administration expenses, and including all accrued interest, stands at $1,224,546.94. [3]

Section III B.2. of the Initial Settlement Agreement (Exhibit B) provides that the remaining funds are to be distributed to "appropriate governmental and/or charitable entities to further the goal of increasing awareness of tenant screening and the duties and obligations under the FCRA and the NYFCRA."[4]

In September 2007 the plaintiffs submitted their proposed *cy pres* distribution plan to the defendant which provided for distribution of the funds to a group of non-profit organizations, to be administered by the New York Bar Foundation ("NYBF"), the charitable arm of the New York State Bar Association. ("NYSBA") (the "Proposed Plan").  That group consists of The Legal Aid Society ("LAS"), Legal Services NYC ("LSNYC"), The City-Wide Task Force on Housing Court  ("CWTFHC"), the Neighborhood Economic Development Advocacy Project ("NEDAP") and the NYSBA.  (A copy of the Proposed Plan is attached as Exhibit F).

The Proposed Plan includes a broad array of educational, training and informational programs, for both members of the public (including tenants and landlords) and the bar, to heighten awareness of tenant blacklisting issues as well as to increase understanding of the rights and obligations of tenant screening

---

[3] An accounting of the funds, prepared by the class administrator Garden City Group, is attached as Exhibit E.

[4] The Amended Settlement Agreement did not alter or affect this provision.

issues.  In addition, the plan includes funding for both the LAS and LSNYC to provide legal representation to low-income tenants who require legal assistance in resolving tenant blacklisting problems, including, where necessary, litigation to achieve appropriate relief such as the expungement benefit included in the settlement.

The defendant initially rejected the Proposed Plan and instead suggested that one-half of the *cy pres* fund be distributed to the New York City Housing Authority, as well as the Housing Authority of several upstate New York cities. That proposal was not accepted by the plaintiffs.

Subsequently, as provided in Para. VII.G of the Initial Settlement Agreement, the plaintiffs requested the mediator's assistance in resolving the matter, as it appeared the parties were far apart on this issue.  (Exhibit G).  In response to the mediator's request to the defendant for further clarification of its proposal, it advised that it could not agree to the plaintiffs' proposal as "the organizations select by plaintiffs regularly fund litigation against Defendant's clients..."  (Exhibit H).

The plaintiffs opposed the defendant's Housing Authority distribution plan for a variety of reasons, including the fact that there is no connection whatsoever between the purposes of the action, the settlement and any public Housing Authority.  Moreover, the allegations of the complaint pertained solely to, and the class ultimately certified by the Court, consists solely of tenants named in New

York City Housing Court proceedings and not cases brought outside New York City.

The mediator subsequently advised the plaintiff's counsel that the defendant would not alter its fundamental opposition to any portion of the *cy pres* fund being used to fund any litigation against any landlord.

Thereafter, in April, 2008 the plaintiff's counsel wrote the defendant's counsel and requested clarification of the defendant's opposition to litigation funding by asking if the defendant was opposed to offensive litigation (consisting of representation of tenants in litigation commenced by them against landlords) or all litigation involving landlords.  (Exhibit I).

The defendant's counsel responded that the defendant was opposed to *any* portion of the *cy pres* fund being used to fund *any*  litigation involving landlords, either offensive or defensive.  (Attached as Exhibit J).

### ARGUMENT

### I. THE PROPOSED PLAN PROVIDES FOR EDUCATIONAL, TRAINING AND LITIGATION TO SUPPORT AND ACHIEVE THE BENEFITS OF THE CLASS SETTLEMENT

The Proposed Plan provides for the administration of the funds to the NYBF for distribution to the LAS, LSNYC, the  CWTFHC, NEDAP and the NYSBA.  The CWTFHC, NEDAP and the NYSBA do not have any current plans to use any funds they receive under the Proposed Plan for litigation.

### 1.  Citywide Task Force on Housing Court

CWTFHC plays an important role in New York City as the leading provider of information to parties about their rights in eviction cases brought in the Housing Court.  CWTFHC maintains a regular presence in the Housing Court in each borough of the City with informational tables and staff members who offer guidance and assistance to all who need it.  As stated in its website, (www.cwtfhc.org)  CWTFHC "is a non-profit coalition established in 1981 to address the systemic challenges to justice in New York City's Housing Court." CWTFHC publishes fact sheets and organizes training sessions and conferences about the Housing Court system, its procedures and judges.  CWTFHC has previously held educational programs, open to the general public, about tenant screening issues and tenant "blacklisting."  The Proposed Plan includes funds that will enable CWTFHC to expand the services it already provides in this area to include the related area of tenant screening and the Housing Court aspects of credit reporting issues.

### 2.  Neighborhood Economic Development Advocacy Project

As stated in its website (www.nedap.org) NEDAP is a "resource and advocacy center for community groups in New York City… (whose mission is to promote community economic justice and to eliminate discriminatory economic practices that harm communities and perpetuate inequality and poverty.

NEDAP publishes and distributes numerous fact sheets and other educational materials explaining the rights and obligations of consumers and credit reporting agencies under the Fair Credit Reporting Act and the New York Fair Credit Reporting Act.  The Proposed Plan includes funds that will enable NEDAP to expand the services it already provides in this area to include the related area of tenant screening and the Housing Court aspects of credit reporting issues.

### 3.  The Legal Aid Society and Legal Services NYC

Both the LAS and LSNYC are well established legal services organizations in New York  City which provide a variety of legal services to low-income New Yorkers.  Between them, they currently have over 120 attorneys representing tenants in Housing Court in defense of eviction proceedings commenced by landlords.  LAS and LSNYC attorneys regularly appear in the Housing Court, in all five boroughs of New York City, on behalf of low income tenants who are sued in non-payment and holdover summary proceedings and who are facing eviction from their homes.  The filing of such cases, and subsequent activity occurring in those proceedings, comprise the data that is the subject of the defendant's tenant screening reports.

As set forth in the Joint Declaration of April Newbauer, Attorney-in-Charge of the Queens Civil Practice of the LAS, and Raun J. Rasmussen, Chief of Litigation and Advocacy of LSNYC, litigation is often necessary to obtain accurate or expunged reports from tenant screening companies such as the defendant.

In order to obtain the key benefits of the settlement agreement in this action (expungement of baseless or dismissed Housing Court cases, and accurate reporting of such cases) it will be necessary for tenants to actively insure that their files maintained by the defendant and other tenant screening bureaus are complete, up to date and fully accurate and that cases which should be expunged receive such treatment.   This active oversight will be particularly necessary because many tenants who previously entered settlement agreements in Housing Court eviction proceedings which provide for the "deemed" vacatur of a possessory or money judgment, or a "deemed" discontinuance of the proceeding, upon the occurrence of certain events (such as payment, providing proof of prior payment, filing an income certification affidavit for certain low income housing programs etc.) often cannot receive the full benefit of such provisions without engaging in further litigation.

Before the advent of tenant screening companies such as the defendant, Housing Court settlement agreements that provided for "deemed" judgment vacaturs and petition dismissals were considered sufficient mechanisms to protect tenants from future harm caused by such proceedings.  However, tenant screening companies only report the synthesized data that has been provided to them by OCS, instead of actually reviewing Housing Court files.[5]  "Deemed"

---

[5] In **Dennis v. BEH-1, LLC and Experian Information Solutions, Inc.** 520 F.3d 1066 (9th Cir. 2008) the defendant credit reporting agency issued a credit report stating that a Housing Court case had been settled with a judgment against the tenant, despite the fact that the hand-written settlement stipulation it reviewed unambiguously stated there was no judgment and despite the

vacaturs and dismissals are never reported to anyone by OCS and therefore never make it into tenant screening company reports.  And, many landlords are unwilling to voluntarily file stipulations vacating judgments or discontinuing proceedings where such relief is both appropriate and necessary to fully effectuate the terms of a prior settlement agreement.  As a result, tenants are compelled to engage in additional litigation with their landlords by filing motions or Orders to Show Cause to obtain either the vacatur of a judgment or the dismissal of a proceeding provided for in a prior settlement agreement.  Tenants will also be required to engage in additional litigation in order to obtain the full benefit of previously executed Housing Court settlements.

Both The LAS and LSNYC will use funds from the Proposed Plan to engage in such litigation, where necessary, to fully and properly represent their clients.  The use of *cy pres* funds for this purpose by The LAS and LSNYC goes to the heart of the settlement of this action and will dramatically assist New York City tenants in obtaining accurate tenant screening reports and all of the benefits achieved by the class settlement.

---

fact that the court record showed that the case had been dismissed.  When Experian refused to correct the report the tenant was forced to commence suit.  The Ninth Circuit not only upheld Dennis' FCRA claims, it *sua sponte* awarded summary judgment on his claim that Experian failed to conduct a reasonable reinvestigation, as required by 15 USC § 1681i.  *Dennis* illustrates not only the problems faced by many tenants when credit reporting agencies conduct a less than cursory review of Housing Court records, but also the extent to which litigation is sometimes necessary to secure an accurate credit report.

## II. THE COURT SHOULD APPROVE THE PLAINTIFFS' PROPOSED PLAN IN ITS ENTIRETY

**I. Nature and Purpose of *Cy Pres*:**

It is well established that under the ***cy pres*** doctrine, which literally means "coming as near as possible", the residue of a class action award or settlement must be distributed for the indirect or partial benefit of the class.[6]  Historically, such funds have been used to benefit groups which have some relation to the purpose of the class action.  Alternatively, funds are put to the "next best use."

Courts have broad discretion in distributing unclaimed class action funds.[7]

Many courts, including those within the Second Circuit, have held that awards to legal service providers, such as Legal Services and the Legal Aid Society, satisfy the "indirect benefit" requirement under the *cy pres* doctrine.

According to the New York State Bar Association's Manual on Cy pres For Legal Services[8]   "(M)any courts have held that awards to legal services providers satisfy the cy pres requirement of indirect benefit to class members.  Since parties to a class action often cannot afford independent counsel, donations to organizations devoted to representing low-income people promote, albeit indirectly and not specifically, the interests of class members."[9]

---

[6]  See H. Newberg, Newberg on Class actions § 10.14 (3d ed. 1992).
[7]  See *id.* at § 11.20.
[8]  (Special Committee on Funding for Civil Legal Services) (January 2007)(Exhibit K)
[9]  *Id.* App. D, p. 42.

Use of *cy pres* funds for legal services is a mechanism through which courts and class attorneys can help close the "justice gap" in New York, especially in light of the many cutbacks in federal funding for legal services.[10]

### 2. Cy Pres Awards to Legal Services Organizations

In *Masters v. Wilhelmina Model Agency, Inc.*, 473 F. 3d 423, 436 (2d Cir. 2007) the Second Circuit affirmed the proposition that "the purpose of *cy pres* distribution is to put the unclaimed fund to its next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class." (quoting from 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 10:17 (4th ed. 2002).

"Although the use of funds for purposes closely related to their origin is still the best *cy pres* application, the doctrine of *cy pres* and the courts' broad equitable powers now permit the use of funds for other public interest purposes by educational, charitable, and other public service organizations." *In re Motorsports Merchandise Antitrust Litigation*, 160 F. Supp. 2d 1392 (ND Ga. 2001) (quoting *Superior Beverage Co. v. Owens-Illinois,* 827 Fed. Supp. 477, 478-9).

The growing trend in jurisdictions across the country is to distribute residual class action funds to legal service organizations in dire need of funding.[11]  New

---

[10] *Id.*  p. 1.

[11] *Id.* at, 1396-98 (awarding *cy pres* distributions to charities such as the Make-A-Wish Foundation, the American Red-Cross, Children's Healthcare of Atlanta, the Atlanta Legal Aid Society, and the Lawyers Foundation of Georgia); *Superior Beverage Co. v. Owens-Illinois, Inc.*,

York is no exception; "the court may direct that residual funds be distributed to a reputable charity or public service organization." *Plotz v. NYAT Maintenance Corp.*, 2006 U.S. Dist. LEXUS 4799, *4-5 (S.D.N.Y. 2006) (Ellis, MJ.) It cannot seriously be disputed that the organizations listed in the Proposed Plan are reputable charitable and/or public service organizations.

Courts in the Southern District of New York have consistently approved *cy pres* awards to legal service providers.  For example, in *Jones v. National Distillers*, 56F. Supp. 2d 355 (S.D.N.Y. 1999) a case involving securities fraud, Judge Motley approved a motion by class counsel to award $18,000.00 in residual funds to the Civil Division of the Legal Aid Society, rather than to a securities fraud-related organization, despite the fact that that entity was more directly related to the plaintiffs' injury.  Judge Motley found that funds remaining after distribution to class members can be directed to organizations engaged in "combating harms similar to those that injured the class members.  Such a donation may serve the cy pres principle of indirectly benefitting all class members." 56 F. Supp. 2d at 358.

The Court reasoned that such an award, although more directly related to the class action, would not necessarily benefit the plaintiffs who may no longer be investors.  The Court explained its support for a Legal Aid Society award, stating:

The intent of the settlement fund was to help those claiming injury by civil

827 F. Supp. 477, 478-79 (N.D. Ill. 1993) (approving charitable donations of unclaimed settlement funds to support non-profit provision of pro bono legal services.)

securities fraud.  The Legal Aid Society Civil Division exists for the at least somewhat analogous purpose of helping those needing legal assistance for various civil matters.  The tie to the intent of the fund is thin, but not as thin as it would be if the donation served an entirely unconnected cause such as a dance performance or a zoo.  The Legal Aid Society Civil Division is an entirely proper recipient of a charitable donation.  It is as appropriate a recipient of the unclaimed class funds as any, given both the difficulty of targeting class members with the funds and the history of courts approving donations of unclaimed class funds to the cause of non-profit legal services.

More recently, in *Fears v. Wilhelmina Model Agency*, 2007 WL 1944343 (S.D.N.Y.) on remand, Judge Baer affirmed his May 5, 2005 decision in which he approved of *cy pres* distribution of residual funds from a class action to several charities.  Among the nine charity recipients was the Civil Division of the Legal Aid Society, which received one million dollars over two years.  Relevant precedent makes it abundantly clear that New York courts are not only willing to award *cy pres* funds to legal service organizations, but they in fact prefer it.  The New York State Attorney General has also endorsed awarding *cy pres* funds to legal service organizations.[12]  None of these awards to legal service organizations include any restriction on using the funds for litigation on behalf of otherwise eligible clients of those organizations.

### III. THE PLAINTIFFS' PROPOSED PLAN IS CONSISTENT WITH THE SETTLEMENT AGREEMENT'S *CY PRES* PROVISION.  IF IT IS NOT, THE COURT IS EMPOWERED TO AMEND THE SETTLEMENT ORDER IN A MANNER CONSISTENT WITH THE OBJECTIVES OF THIS ACTION

---

[12] Press Release, Office of the New York State Attorney General Andrew Cuomo, "Domestic Violence, Breast Cancer Awareness Groups among Recipients of Anti-trust Settlement Funds, Funds Derived From Settlement of Price-Fixing Allegations Involving Women's Shoes" (October 26, 2001), *Available at*, http://www.oag.state.ny.us/press/2001/oct/oct26a_01.html

The Proposed Plan is a fully proper and appropriate use of the *cy pres* provision of the settlement agreement and the Court has ample authority to approve it.  The defendant may argue that the Proposed Plan, to the extent it provides funding for litigation against landlords, is outside the parameters of the settlement agreement.  Such a contention would be inaccurate.

The settlement agreement provides that the *cy pres* are to be used "to further the goal of increasing awareness of . . . the duties and obligations under the FCRA and the NYFCRA."  The primary "duties and obligations" of any credit reporting agency, such as the defendant, under the applicable state and federal credit reporting laws are insuring accurate credit reports.  As shown above, litigation by tenants against landlords is sometimes necessary in order to achieve accurate credit reporting (if not total expungement from the defendant's database).  Accordingly, the *cy pres* provision previously agreed to by the parties, and approved by the Court, is fully consistent with the plaintiff's Proposed Plan.  That plan should therefore be approved by the Court.

However, even if the Court finds that the *cy pres* provision of the settlement agreement is in any way unclear, or that it does not expressly provide for distribution of the funds in the manner sought by the plaintiffs,  it has ample authority to modify the order so as to insure that it is consistent with the goals and benefits of the action and the settlement agreement.  *See* FRCP 60(b)(5) ("On

motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect. . . [or] (6) any other reason that justified relief."); *United States v. Broadcast Music, Inc.*, 275 F.3d 168, 175 (2d Cir. 2001) ("Using its equitable powers, a court may modify [an ambiguous term in] a decree . . . .") [internal quotation marks and citations omitted].[13] Furthermore, among the types of judgments and orders that may be so modified are dismissals pursuant to decrees or orders issued on consent of the parties in class action cases.[14]

The Second Circuit has explained that, "[because consent decrees embody a compromise between parties who have waived their rights to litigation, they

---

[13]     It should be noted that in its Final Judgment and Order of Dismissal of April 23, 2007, the Court expressly "retain[ed] jurisdiction over the Action and the Parties and Class, and the administration and enforcement of the Settlement [in order to resolve] any disputes or controversies arising with respect to the interpretation, consummation, enforcement, or implementation of the Settlement [in the event the mediator is unsuccessful in doing so]."  (Dkt. No. 168, Part 1, at ¶ 14.)

[14] *See, Wyatt By and Through Rawlins v. King*, 793 F. Supp. 1058, 1061 (M.D. Ala. 1992) ("When parties to consent decree [in class action litigation] subsequently propose to amend that decree, the trial court . . . must examine evidence submitted by the parties to determine whether the proposed modification is justified.  It is the court's responsibility to discern the underlying purpose of the decree and decide whether modification would be consistent with that purpose.") [internal quotation marks and citations omitted]; *Luevano v. Campbell*, 93 F.R.D. 68, 92-93 (D.D.C. 1981) ("The Court has inherent power, for good cause shown and in appropriate circumstances, to modify the obligations of the Consent Decree [in a class action litigation] in order to further its purposes in light of unforeseen problems which may arise.") [citations omitted], *accord, Alexander v. Chicago Park Dist.*, 79-CV-2242, 1989 WL 152849, at *1 (N.D. Ill. Nov. 22, 1989); *Bolden v. Penn. State Police*, 73 F.R.D. 370, 372 (E.D. Pa. 1976) (District Court had "inherent power" to modify consent decree entered in class action suit to correct alleged discrimination in employment-and-promotion policies of state police).

18

should be construed basically as contracts." ***Broadcast Music, Inc., supra***, ,

275 F.3d at 175 [internal quotation marks and citations omitted].  As a result,

"[where . . . a term of a consent decree is ambiguous, a court may consider

extrinsic evidence to ascertain the parties' intent, including the circumstances

surrounding the formation of the decree." *Id.* [internal quotation marks and

citations omitted].  "A court reviewing an ambiguous consent decree provision

may also examine any technical meaning words used may have had to the

parties, and any other documents expressly incorporated in the decree." *Id.*

[internal quotation marks and citations omitted].  Finally, a court reviewing an

ambiguous consent decree provision "may, in construing the provision, consider

the purpose of the provision in the overall context of the judgment at the time the

judgment was entered." *Id.* [internal quotation marks and citations omitted].

It should be noted that, where a decree has been the product of institutional

reform, an application for the modification of such decree "should . . . be viewed

with generosity" and "[granted] with a rather free hand." ***New York State Assoc.***

***for Retarded Children, Inc. v. Carey***, 706 F.2d 956, 969-71 (2d Cir. 1983).

Moreover, this "flexible approach" is appropriate in cases where the "institution"

sought to be reformed is *not* an instrument of the government (and thus the

litigation was not brought against a government entity).  ***Patterson v. Newspaper***

***& Mail Deliverers' Union***, 13 F.3d 33, 38 (2d Cir. 1993).

Even if the Court finds that the settlement agreement does not expressly permit the use of *cy pres* funds for litigation against landlords necessary to achieve its full benefits, it has authority to modify the agreement in order to assure that such funds are used in a manner consistent with the goals of the litigation.

## CONCLUSION

It is respectfully submitted that the Court should issue an order granting the plaintiffs' motion for distribution of the *cy pres* as set forth in the Proposed Plan, together with such other relief as may be just and proper.

Dated: New York, New York
      November 25, 2008

                              Respectfully submitted,

                              FISHMAN & NEIL, LLP
                              James B. Fishman (JBF 8998)
                              305 Broadway
                              Suite 900
                              New York, NY  10007
                              (212) 897 5840

                              LOCKS LAW FIRM, PLLC
                              Andrew P. Bell (APB 1309)
                              110 East 55th Street
                              New York, NY 10022
                              (212) 838 3333

                              KLAFTER OLSEN & LESSER
                              Seth R. Lesser (SRL 5560)
                              1311 Mamaroneck Avenue
                              Suite 220
                              White Plains, NY 10605
                              914 997 5656

                              AARP FOUNDATION
                              Stacy J. Canan (SJC 4745)
                              601 E Street, N.W.
                              Washington, D.C.  20049
                              (202) 434 6045

                              Plaintiffs' Co-Lead Counsel

21

State of New York)
                ss.:
County of New York)

### AFFIDAVIT OF SERVICE

Rhode M. Al Khani, being duly sworn, deposes and says:

I am not a party to this action, I am over the age of 21 years and reside in Kings County, New York.

On November 26, 2008 I served the within **NOTICE OF MOTION FOR AN ORDER APPROVING DISTRIBUTION OF *CY PRES* FUNDS** and supporting papers on the addressee noted below by depositing a true copy thereof enclosed in a wrapper addressed as shown below into the custody of Federal Express for overnight delivery, prior to the latest time designated by that service for overnight delivery to each of the noted addresses:

To:   Charles Newman
      Bryan Cave
      211 North Broadway
      Suite 3600
      St. Louis, MO 63102

      Suzanne Berger
      Bryan Cave
      1290 Sixth Avenue
      New York, NY 10104

                                        Rhode M. Al Khani

Sworn to before me
this 26th day
November, 2008

LAURENCE H. PEARSON
Notary Public, State of New York
No. 4511464
Qualified in New York County
Term Expires Sept. 30, ~~19~~ 2009

FISHMAN & NEIL, LLP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Docket No. 04 CV-1611 (LAK)(ECF)

ADAM WHITE,
individually and on behalf of
all others similarly situated,

Plaintiff,

-against-

FIRST AMERICAN REGISTRY, INC.,
n/k/a FIRST ADVANTAGE SAFERENT, INC.,

Defendant.

*NOTICE OF MOTION FOR AN ORDER APPROVING DISTRIBUTION
OF CY PRES FUNDS*

FISHMAN & NEIL, LLP
ATTORNEYS AT LAW

*Attorney(s) for*

**Plaintiff**

Signature (Rule 130-1.1-a)

305 BROADWAY – SUITE 900
NEW YORK, NEW YORK 10007
(212) 897-5840

Print name beneath

To

Service of a copy of the within is hereby admitted.