**EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

ADAM WHITE,
individually and on behalf of all others
similarly situated,

            Plainiff,

       -against-

FIRST AMERICAN REGISTRY, INC.,

           Defendant,

     -and-

DERA JACKSON-DANIELS,
individually and on behalf of all others
similarly situated,

         Plaintiff-Intervenor-Applicant,
-------------------------------------------------------------x

04-CV-1611 (LAK)


CLASS ACTION
COMPLAINT

Plaintiff **ADAM WHITE** (hereafter "Mr. White") and Plaintiff-**Intervenor-Applicant DERA JACKSON-DANIELS** (hereafter "Ms. Daniels") (collectively hereafter "Plaintiffs") by their attorneys Fishman & Neil, LLP, Locks Law Firm, PLLC, and the AARP Foundation, as and for their complaint against the defendant **FIRST AMERICAN REGISTRY, INC.** (hereafter "Defendant" or "FAR") allege, upon information and belief, except those allegations which directly relate to each plaintiff him or herself which are alleged upon personal knowledge, as follows:

## PRELIMINARY STATEMENT

1.     This is an action for declaratory and injunctive relief and money

damages brought pursuant to 15 U.S.C. § 1681, *et seq.* ("Fair Credit Reporting Act" or "FCRA"), the New York Fair Credit Reporting Act (General Business Law Art. 25, §§ 380, *et seq.*) ("NYFCRA"), and New York Deceptive Practices Act (General Business Law §§ 349) brought by plaintiffs on behalf of themselves and all others similarly situated.

2.    At issue in this litigation is the wholesale failure of FAR, a tenant screening bureau, as well as a credit reporting agency within the meaning of the federal and state laws, to comply with those laws' requirements that the consumer reports it produces are accurate, complete and not misleading. Instead, FAR compiles records of the initiation of landlord/tenant cases brought in the New York Housing Court (and possibly other courts as discovery may demonstrate) but it fails to update such information periodically to reflect dispositions or further proceedings in the cases.  FAR markets and sells this information to landlords who use it to screen potential tenants.  As a consequence of FAR's failure to ensure that the information is – as required by law – accurate and not misleading, individuals, like the plaintiffs herein, can be denied the opportunity to obtain housing.  FAR's actions, and omissions have been undertaken in utter disregard for its clear and unequivocal legal obligations to ensure that its reports are complete, accurate and not misleading.  Unless restrained and enjoined, will continue to harm consumers.

## PARTIES

3. Mr. White is a natural person over the age of eighteen years residing in the County of Kings, City and State of New York. Mr. White is a "consumer" within the meaning of 15 U.S.C. § 1681a(c) and GBL § 380-a(b).

4. Ms. Jackson-Daniels is a natural person over the age of eighteen years residing in the County, City and State of New York. Ms. Jackson-Daniels is a "consumer" within the meaning of 15 U.S.C. § 1681a(c) and GBL § 380-a(b).

5. Defendant First American Registry is a Nevada corporation whose principal place of business is located at 11140 Rockville Pike, Rockville, Maryland. The defendant regularly does business in the County, City and State of New York.

## JURISDICTION AND VENUE

6. This Court possesses original jurisdiction of this matter pursuant to 28 U.S.C. § 1331 insofar as the plaintiffs bring claims arising under the FCRA, and it possesses supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), insofar as the acts and transactions that give rise to this action occurred, in substantial part, in this District. Venue is also proper in this District since the Defendant can be found in, has agents in and/or transacts business in this District.

## CLASS ALLEGATIONS

8.      This action is brought as, and may properly be maintained as, a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiffs bring this action on behalf of themselves and all members of a class (the "Class"), consisting of all persons who are listed, or who were listed, from the three years prior to the initiation of this action up to and including the present day, in Defendant's National Registry Check database as a tenant, occupant, respondent, defendant or other similar categorization in a proceeding commenced in the Civil Court of the City of New York, Housing Part.  Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest, and any of its subsidiaries, affiliates, and officers, directors, employees and agents as well as any person or entity who is named in any such proceeding as a landlord.[1]

9.      The requirements of Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure are met in that:

        a.      Rule 23(a)(1) Numerosity -  The Class for whose benefit this action is brought is so numerous that joinder of all class members is impracticable.  Plaintiffs believe that there are at least hundreds of thousands of

---

[1] This proposed class definition is provisional and may be adapted, as appropriate, upon discovery, including, but not limited to, discovery as to whether Defendant's violations of law, as set forth hereinafter, have also affected its records as to consumers in courts other than the Civil Court of the City of New York, Housing Part.

members of the Class, as described above, although the exact number and identities of individual class members are presently unknown, and can only be ascertained through appropriate discovery.

      b.    Rule 23(a)(2) Commonality - There are no individual issues in this case. All of the legal and factual issues in this class action are common to each proposed class member; including:

          i.    Whether FAR is a credit reporting agency within the meaning of the FCRA and the NYFCRA?

          ii.    Whether FAR has maintained consumer records with respect to proceedings in the Civil Court of the City of New York, Housing Part, and, if so, whether FAR has failed, and continues to fail, to maintain policies and procedures for ensuring that those records periodically updated?

          iii.    Whether FAR has prepared, and today continues to prepare, consumer reports for sale or provision to third-parties concerning proceedings in the Civil Court of City of New York, Housing Part, without maintaining policies and procedures for ensuring that those reports are accurate, complete and not misleading?

          iv.    Whether FAR's actions have violated, and continue to violate, 15 U.S.C. § 1681e(b), and/or subsections (a)(3) and (e) of

New York General Business Law § 380-j and New York General
Business Law § 380-k?

      v.     Whether FAR's actions have violated, and continue to
violate GBL Section 349?

      vi.    Whether FAR's alleged violations of law have been
negligent and/or willful?

      vii.   Whether plaintiffs and the Class are entitled to
declaratory or injunctive relief as a result of FAR's alleged violations
of law?

      viii.   Whether plaintiffs and the Class are entitled to punitive
damages as a result of FAR's alleged violations of law?

      c.     Rule 23(a)(3) Typicality - Plaintiffs' claims are typical of the
proposed class members' claims inasmuch as all such claims arise out of FAR's
alleged failure to maintain its database within proscriptions required by federal
and state law.

      d.     Rule 23(a)(4) Adequacy of Representation - Plaintiffs can and
will fairly and adequately represent and protect the interests of the proposed
class.  Plaintiffs have no interests antagonistic to the interests of the other
members of the Class. Plaintiffs are committed to the vigorous prosecution of this
action and has retained competent counsel with substantial experience in
representing tenants in the New York City Housing Court, class actions and

consumer litigation, including actions brought under the FCRA and the NYFCRA. Accordingly, plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class.

10.    Without the representation provided by plaintiffs, and without this action proceeding on a class-wide basis, Defendant will not change its wrongful conduct and ongoing practices and virtually no proposed class member would be able to obtain the relief sought herein because the claims are unknown to most consumers, and, even if known, are cost prohibitive to pursue because of the burden and expense of showing the systematic and regular nature of Defendant's failure to comply with applicable law.

10.    Rule 23(b)(2) - Certification is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure because defendants have acted on grounds generally applicable to the proposed classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.  Plaintiffs seek to obtain declaratory and injunctive relief requiring FAR to implement company policies designed to prevent the wrongful activities described herein and for whatever further equitable relief the Court deems appropriate to remedy the wrongful actions that have already taken place.

## FACTUAL ALLEGATIONS

11.    FAR represented itself as "the nation's largest and most experienced information management company, providing the multi-family housing industry

with risk management expertise for resident screening of applicants." *See* http://www.residentscreening.com/6about_main.html (current as of 2/5/04). Among the services it sells is prospective tenant screening, pursuant to which it offers, for a fee, "immediate internet access to The National Registry Check™, our comprehensive proprietary database of over 33 million landlord/tenant eviction court records." *Id.* In other words, it sells information about potential residential tenants to landlords and real estate management companies that is based upon court records. According to Defendant, by using National Registry Check, a landlord can:

> Search the nation's largest database of over 33 million landlord/tenant court records involving suits filed for eviction, failure to pay rent, and property damage. Discover your applicant's past lease performance and avoid inviting tenancy problems in the future. The National Registry Check is the most powerful tool available today to predict which applicants will pay their rent—and those who won't.

http://www.residentscreening.com/1prod_main.html (Current as 2/5/04). The National Registry Check database is, according to FAR, used "over 17,000" times a day. http://www.residentscreening.com/1prod_natl_reg_check_more.html (Current as of 2/5/04).

12. FAR unequivocally represents that its National Registry Check court records database is "fast accurate and complete", http://www.residentscreening.com/1prod_natl_reg_check.html (Current as of 2/5/04), and, indeed, that the "**database is updated every day, every hour and**

**every minute** via court record downloading, landlord supplied payment information and subscriber inquiries."

http://www.residentscreening.com/1prod_natl_reg_check_more.html (Current as of 2/5/04) (emphasis supplied).

13. FAR further represented that: "All records are collected and maintained in strict compliance with the Federal Fair Credit Reporting Act and are **continually, systematically** audited for accuracy." *Id.* (Current as of 2/5/04) (emphasis supplied).   As this public representation acknowledges, and also as a result of other proceedings that have involved FAR, defendant knows, and for all relevant time periods has known, of its responsibilities requiring compliance with the FCRA.

14. The resident screening reports prepared and sold by FAR are "consumer reports" as defined by both the FCRA, 15 U.S.C. § 1681a(d), and the NYFCRA, GBL § 380-a(c).  Thus, FAR is a "consumer reporting agency" within the meaning of FCRA, 15 U.S.C. § 1681a(f), and the NYFCRA, GBL § 380-a(e).

15. One of the court sources from which FAR has obtained, and today continues to obtain, court records for inclusion in its National Registry Check database is the New York City Housing Court (the "Housing Court").  Pursuant to an agreement with the New York Unified Court System ("UCS"), FAR paid $34,000.00 to the UCS for the purchase of information about court proceedings filed with the Housing Court  for the period of April 1, 2002 to March 31, 2003.

FAR's National Registry Check database contains information about tens, if not hundreds, of thousands of New York City Housing Court proceedings which it purchased from UCS.

16.  Notwithstanding its express representations as to its database's accuracy and completeness, FAR does not, as a routine policy and practice, in preparing consumer reports, request, purchase, or obtain copies of any actual documents filed in the Housing Court in connection with any proceeding before it.

17.  FAR's routine data collection policy, practice and procedure employed in preparing consumer reports does not include sending any employee, agent or representative to the office of any clerk of the Housing Court, or any other location maintained by the UCS, to view any court files or documents filed with that court.

18.  In preparing consumer reports FAR's routine policy and practice has been, and today continues to be, only to obtain, from UCS, information about the initial filing of Housing Court proceedings.  In doing so, FAR has not had, and today does not have, a policy to obtain, or a practice of obtaining, updated information to include in the National Registry Check database about Housing Court proceedings beyond the initial filing.  Nor has FAR had, and today it does not have, a procedure whereby it periodically re-evaluates its database to determine whether information it maintains concerning Housing Court proceedings has become obsolete or misleading.  When FAR has prepared

consumer reports about Housing Court proceedings for its customers, and today when it continues to prepare such reports, it had, and today has, no policy to obtain, or practice of obtaining, updated or current information.

19. UCS has made available to FAR, and continues to make available to FAR, updated information about the current status of court proceedings FAR has previously purchased, yet, FAR itself has had, and today continues to have, no routine practice or policy to incorporate this updated information into its database when preparing consumer reports. As a result, the updated information provided by the UCS has not been, and today is not, regularly or routinely incorporated into the consumer reports FAR has provided or continues to provide to its customers. As a further result, the actual and accurate status of thousands, of ongoing Housing Court proceedings has not been, and is not, reflected in the National Registry Check database.

20. Further, also as a result of FAR's failure to update its National Registry Check database about proceedings beyond initial filings in Housing Court, the database has contained, and today continues to contain, numerous proceedings that were dismissed, discontinued, abandoned or withdrawn, and the database has failed to, and today continues to fail to, reflect such dispositions.

21. Instead, it is only when FAR receives a dispute from a consumer challenging the accuracy or misleading nature of an initial FAR report that it takes steps to incorporate updated information into the National Registry Check

11

database.  By that time, however, an inaccurate and misleading report has already been provided by FAR to a third party.  Since, in numerous instances, a FAR report is the sole basis used by prospective landlords in making an adverse determination about the application submitted by a prospective tenant, the harm has already occurred, or, similar harms will continue to occur in the future, unless FAR's practices are enjoined and rectified.

22.  The circumstances of Mr. White are typical of how FAR's practices impact consumers whose credit reports FAR handles.

23.  In 1996, Mr. White resided on the top floor in a rent stabilized apartment located at 310 East  83rd St. New York, New York.  The monthly rent was $649.00.

24.  For many months during his tenancy, a leak in the roof of the building caused water to enter through the ceiling and into Mr. White's apartment, causing damage to his property and diminishing the value of the apartment.

25.  Mr. White repeatedly requested that the landlord repair the leak.  Mr. White further requested that the landlord afford him a reasonable rent abatement of the monthly rent based upon the diminished value of the apartment.

26.  The landlord failed and refused to make the repairs or agree to any rent abatement.

27.  Mr. White consulted counsel and was advised to withhold his rent in order to compel the landlord to make the needed repairs.  Accordingly, Mr. White

withheld his monthly rent for November and December 1996, in the total amount of $1,298.14.

28. The landlord continued to refuse to make the needed repairs or agree to a rent abatement.

29. Instead, on or about December 13, 1996 the landlord commenced a summary non-payment proceeding against Mr. White in the Housing Court pursuant to the New York Real Property Actions and Proceeding Law alleging that Mr. White owed $1,298.14 in rent arrears. *Koppelman v. White*, Civil Court New York County, (Index No. L&T 118370/96)(the "eviction proceeding") In its petition the landlord requested that the court issue both a money judgment against Mr. White in the amount of $1298.14, as well as a possessory judgment directing his eviction from the apartment.

30. On or about December 24, 1996 Mr. White appeared in the eviction proceeding by serving and filing a written answer to the petition. In his answer Mr. White denied the landlord's allegations and asserted a counterclaim alleging that the landlord had breached the warranty of habitability. (New York Real Property Law § 235-b)

31. On January 2, 1997, the first time the eviction proceeding appeared on the court calendar, it was dismissed by the court based upon the landlord's failure to appear to prosecute the proceeding.

32. The landlord did not commence a new proceeding against Mr. White

13

seeking the rent claimed in the petition. The landlord never obtained a judgment against Mr. White in the eviction proceeding or in any other proceeding.

33.  The landlord never obtained a determination, of any nature, from any Court, that it was entitled to either a money judgment or a possessory judgment against Mr. White or directing or authorizing the eviction from his apartment.

34.  Instead of prosecuting the eviction proceeding, the landlord agreed to repair Mr. White's apartment.  In addition, the landlord consented to a reasonable rent abatement to Mr. White based upon the presence of defective conditions in his apartment.

35.  In or about August 2001, having left the apartment on East 83rd Street, and while residing in a small, non-rent regulated apartment in Brooklyn, New York with his infant son and his son's mother,  Mr. White submitted an application to Eiges & Eiges Management Co. d/b/a Plaza Management, ("Eiges") the management company for a different landlord, to rent a larger rent stabilized apartment in a different residential building in  Brooklyn.  Mr. White's name was added to a waiting list for a vacancy in the building.

36.  In or about  April, 2002, Mr. White's application for the apartment was reached by Eiges and he was considered for a rent stabilized apartment that was larger and less expensive than the apartment in which he was residing.

37.  On or about April 29, 2002, Eiges contacted FAR and requested that it supply a "Registry Check" in connection with Mr. White's application for the new

apartment.

38.  On or about April 29, 2002, FAR provided to Eiges a "tenant registry" consumer report pertaining to Mr. White.  This report contained information about the eviction proceeding that had been brought against Mr. White in December 1996.

39.  The information contained in the consumer report identified the name of the "plaintiff" [sic] as Joseph B. Koppelman, the "defendant" [sic] as Mr. White, the index number for the proceeding, and the "Court" as "Manhattan" in "New York" County.

40.  The report described the "status" of the proceeding simply as "Case Filed," even though it had been dismissed over five years earlier.  Under the heading "Claim$" the report stated 1298 (indicating that the "plaintiff's" money claim against the "defendant" in the proceeding was $1298.00) even though the claim had been dismissed over five years earlier.

41.  The report further described the proceeding as having been commenced in "12/96" and that the "Case-Type" was "non-payment."

42.  The report contained no information whatsoever about the ultimate outcome of the proceeding, including the fact that it had been dismissed in early January 1997, even though FAR knew, or reasonably should have known,  and easily could have determined, the actual closed and dismissed status of the proceeding.

43. The consumer report FAR prepared and provided to Eiges was both materially inaccurate, incomplete and misleading because it described the status of the proceeding simply as "Case Filed", over five years after it had been dismissed.

44. The report was a "consumer report" or a "credit report" within the meaning and definition of 15 U.S.C. § 1681a(d) and NYFCRA § 380-a(c).

45. Shortly after FAR provided the report, Eiges prepared and sent an "adverse action notice" to Mr. White advising him that his application to rent the apartment was denied.

46. The sole reason stated by Eiges in the notice in making this determination was information about Mr. White contained in the consumer report produced by FAR.

47. FAR never advised Eiges that the proceeding involving Mr. White that was referenced in the report had been dismissed, much less dismissed for want of prosecution.

48. Following receipt of the adverse action notice from Eiges, Mr. White wrote a letter to FAR, dated May 7, 2002, requesting a copy of the report that it had issued to Eiges. At no time prior to making this request did FAR provide Mr. White with a copy of the report it had issued to Eiges.

49. In response, Mr. White received a copy of the FAR report, dated May 30, 2002, annexed as Exhibit A hereto.

16

50.  After receipt of the report Mr. White wrote to FAR advising that he "dispute[d] the accuracy, completeness and propriety" of the report and he demanded that it refrain from any further issuance of a report pertaining to him which contained "inaccurate, incomplete, stale, or otherwise inappropriate records."

51.  In response to Mr. White's letter, Dawn G. Johnson, who identified herself as FAR's Manager of Consumer Relations, wrote a letter to Mr. White dated July 16, 2002 marked "Confidential."

52.  Ms. Johnson advised that the defendant had "completed the reinvestigation of the disputed items concerning your report." Ms. Johnson further wrote that "the case you disputed was removed in accordance with New York law, which provides that public record information can exist [sic] for no more than 5 years."

53.  By that time however, the apartment Mr. White sought to rent had been rented to someone else and Mr. White was harmed to his financial detriment by FAR's actions by being unable to obtain the apartment.

54.  The circumstances of Ms. Jackson-Daniels are typical of how FAR's practices impact consumers whose credit reports FAR handles.

55.  Since 1999, Ms. Jackson-Daniels resided in Apartment 1A at a building located at 1608 Amsterdam Avenue, New York, New York.

56. In February 2005, the landlord commenced a summary non-payment

proceeding against Ms. Jackson-Daniels and her husband in the Housing Court pursuant to the New York Real Property Actions and Proceeding Law alleging rent arrears (the "eviction proceeding").

57.   On or about March 22, 2005, Ms. Jackson-Daniels appeared in court regarding the eviction proceeding, where the landlord's lawyer advised her that the landlord wished to discontinue the action.

58.   On the same day, she, the landlord's attorney and the landlord signed a stipulation of discontinuance, and upon her information and belief, the stipulation was then filed with the Court.

59.   In the summer of 2004, Ms. Jackson-Daniels applied with West Harlem Group Assistance ("West Harlem"), the landlord of a building at 625 Lennox Avenue, New York, New York to rent an apartment there. Ms. Jackson-Daniels's name was added to a waiting list for a vacancy in the building.

60.   In or about June 2005, Ms. Jackson-Daniels' application for the apartment was reached by West Harlem and she was considered for a rent stabilized apartment that was larger than the apartment in which she was residing.

61.   On or about August 10, 2005, West Harlem contacted FAR and requested that it supply a "Registry Check" report in connection with Ms. Jackson-Daniels' application for the new apartment.

62.   On or about August 10, 2005, FAR provided to West Harlem a

"tenant registry" consumer report pertaining to Ms. Jackson-Daniels. This report contained information about the eviction proceeding that had been brought against Ms. Jackson-Daniels in February 2005.

63. The report described the "status" of the proceeding simply as "Case Filed," even though it had been discontinued foru or five months earlier.

64. The report contained no information whatsoever about the ultimate outcome of the proceeding, including the fact that it had been discontinued in March 2005, even though FAR knew, or reasonably should have known, and easily could have determined, the actual closed and dismissed status of the proceeding.

65. The consumer report FAR prepared and provided to West Harlem was both materially inaccurate, incomplete and misleading because it described the status of the proceeding simply as "Case Filed", approximately four to five months after it had been discontinued.

66. The report was a "consumer report" or a "credit report" within the meaning and definition of 15 U.S.C. § 1681a(d) and NYFCRA § 380-a(c).

### AS AND FOR A FIRST CAUSE OF ACTION
### (For Violation of the FCRA, 15 U.S.C. § 1681e(b))

67. Plaintiffs repeat and reallege each paragraph set forth above in paragraphs 1-66 as if fully set forth herein.

68. 15 U.S.C. § 1681e(b) provides:

Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

69.  As previously set forth herein, when preparing consumer reports, including those of plaintiffs and of the Class herein, FAR has lacked, and today continues to lack, any reasonable procedures to assure the maximum possible accuracy of the information concerning the individuals about whom the reports relate.  Accordingly, FAR's activities have violated, and today continue to violate, 15 U.S.C. § 1681e(b).

70.  As a result of its knowledge of its responsibilities under the FCRA, FAR's failure to comply with § 1681e(b) as to plaintiffs and the Class has been intentional and willful, or, at the very least, negligent.

71.  As set forth hereinbefore, as a result of FAR's violation of § 1681e(b), plaintiff Adam White was economically harmed to his detriment and is entitled either to actual damages in an amount to be shown according to proof, or alternatively and together with Plaintiff Daniels, to damages in amount of not less than $100 or more than $1,000 pursuant to 15 U.S.C. § 1681n, as well as the other relief set forth below.

72.  FAR's continuing and ongoing failure to comply with § 1681e(b), will, unless restrained and enjoined, cause similar harm to other consumers and members of the Class herein, and, accordingly, Plaintiffs and the Class are

entitled to declaratory and injunctive relief, as set forth below.

73.  In order to punish such conduct by FAR, and to deter FAR and others from engaging in similar practices hereafter, Plaintiffs and the Class are entitled to an award of punitive damages, pursuant to 15 U.S.C. § 1681n, to be distributed to Plaintiffs and the Class in the manner directed by the Court, as well as the other relief as set forth below.  In addition, the Plaintiffs and the Class are entitled an award of statutory attorney's fees pursuant to 15  U.S.C. § 1681n and/or 1681o.

## AS AND FOR A SECOND CAUSE OF ACTION
### (For Violation of the NYFCRA, General Business Law §§ 380-j and 380-k)

74.  Plaintiffs repeat and reallege each allegation set forth in paragraphs 1-73, above, as if fully set forth herein.

75.  Section 380-j(a), of the New York General Business Law provides that:

> No consumer reporting agency shall report or maintain in the file on a consumer, information:
>
> ...
>
> (3) which it has reason to know is inaccurate.

76.  Section 380-j(e) of the New York General Business Law, in turn, provides:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

21

77.   Section 380-k of the New York General Business Law, in turn,

provides:

> Every consumer or reporting agency shall maintain reasonable
> procedures designed to avoid violations of sections three
> hundred eighty-b and three hundred eighty-j of this article....

78.   As previously set forth herein, in maintaining its National Credit

Registry database, FAR knew or reasonably shown have known, and today

knows or reasonably should know, that its entries as to proceedings in Housing

Court were materially inaccurate and misleading.  Accordingly, FAR's activities

have violated, and continue to violate, GBL §§ 380-j(a) and 380-k.

79.   In addition, or in the alternative, as previously set forth herein, when

preparing consumer reports, including those of Plaintiffs and the Class herein,

FAR has lacked, and today continues to lack, any reasonable procedures to

assure the maximum possible accuracy of the information concerning the

individuals about whom the reports relate.  Accordingly, FAR's activities have

violated, and today continue to violate, GBL §§ 380-j(e) and 380-k.

80.   As a result of its knowledge of its responsibilities under the FCRA,

FAR's failure to comply with GBL § 380-j as to Plaintiffs and the Class has been

intentional and willful, or, at the very least, negligent.

81.   As set forth hereinbefore, as a result of FAR's violation of GBL §§

380-j and 380-k, plaintiff White was economically harmed to his detriment, and he

is entitled to an award of actual damages in an amount to be shown according to

22

proof pursuant to GBL §§ 380-l and/or 380-m, as well as other the relief set forth below.

82. FAR's continuing and ongoing failure to comply with GBL § 380-j, will, unless restrained and enjoined, cause similar harms to other consumers and members of the Class herein, and, accordingly, plaintiffs and the Class are entitled to declaratory and injunctive relief, as set forth below.

83. In order to punish such conduct by FAR, and to deter FAR and others from engaging in similar practices hereafter, plaintiffs and the Class are entitled to an award of punitive damages, under GBL § 380-l, to be distributed to plaintiffs and the Class in the manner directed by the Court, as well as the other relief as set forth below.

84. The plaintiffs and the Class are entitled to an award of statutory attorney's fees pursuant to GBL § 380-l.

## AS AND FOR A THIRD CAUSE OF ACTION
### (For Violation of New York General Business Law § 349)

85. Plaintiffs repeat and reallege each allegation set forth in paragraphs 1-84, above, as if fully set forth herein.

86. GBL § 349 proscribes "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

87. GBL § 349 provides that "any person who has been injured by reason of any violation of [their respective] section[s] may bring an action in his own

23

name to enjoin such unlawful act or practice" as well as to obtain actual damages, or fifty dollars, whichever is greater.

88.   As set forth hereinbefore, FAR has engaged in deceptive acts and practices and false advertising within the meaning of GBL § 349, namely, engaging in a practice of making available for sale to the public information as a credit reporting agency and also representing to the public that its database is continually updated and is fast, accurate and complete.

89.   By virtue of the harmful results of its activities, FAR's actions, as set forth hereinbefore, have caused both consumer injury and harm to the public interest.

90.  As set forth hereinbefore, as a result of FAR's violation of GBL § 349, plaintiff White was economically harmed to his detriment, and is entitled either to actual damages in an amount to be shown according to proof, or alternatively and together with Plaintiff Daniels, to damages in amount of $50 pursuant to GBL § 349(h), whichever is greater, as well as the other relief set forth below.

91.   FAR's continuing and ongoing failure to comply with GBL § 349 will, unless restrained and enjoined, cause similar harm to other consumers and members of the Class herein, and, accordingly, Plaintiffs and the Class are entitled to declaratory and injunctive relief, as set forth below.

92.  In order to punish such conduct by FAR, and to deter FAR and others from engaging in similar practices hereafter, Plaintiffs and the Class are entitled

to an award of punitive damages to be distributed to Plaintiffs and the Class in the manner directed by the Court, as well as the other relief as set forth below.  In addition, the Plaintiffs and the Class are entitled an award of statutory attorney's fees pursuant to GBL §§ 349(h).

**WHEREFORE**, Plaintiffs, Adam White and Dera Jackson-Daniels, on behalf of themselves and the Class, prays for this Court to issue an order against Defendant as follows:

a.  Certifying this case as a class action and certifying the named plaintiffs herein to be an adequate class representatives and their counsel to be adequate class counsel;

b.  Entering a judgment pursuant to 28 U.S.C. § 2201 declaring that acts and practices of Defendant complained of herein violates the FCRA and the NYFCRA;

c.  Entering a permanent injunction enjoining Defendant, and its agents and employees, from continuing to prepare and sell credit reports to third parties that do not comply with U.S.C. § 1681e(b) and/or GBL § 380-j(e), and ordering Defendant to adopt and enforce policies and procedures to ensure future compliance with these laws;

d.  Entering a permanent injunction enjoining Defendant, and its agents and employees, from continuing to report, or maintain in files, on consumers information relating to proceedings in New York City Housing

Court that is not current, updated, complete and accurate, and ordering Defendant to adopt and enforce policies and procedures to ensure future compliance with this law;

e.  Entering a permanent injunction enjoining Defendant, and its agents and employees, from continuing to engage in practices that violate Sections 349 and 350 of the New York General Business Law;

f. Entering a judgment, on behalf of plaintiff Adam White, for actual damages proved at trial, or in the alternative, on behalf of White and Daniels either for damages in an amount not less than $100 and not more than $1,000, under 15 U.S.C. 1681n or for damages of $50, under GBL §§ 349(h) and 350-e(3) ;

g.  Entering a judgment, on behalf of plaintiffs and the Class, for punitive damages, in an amount to be determined following evidence at trial, to be distributed to plaintiffs and the Class in a manner directed by the Court;

h.  Entering a judgment awarding plaintiffs the costs of this action, including the fees and costs of experts, disbursements, together with attorneys fees; and

i.  Awarding such other and further relief as the Court finds necessary and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: New York, New York
       September 23, 2005

Respectfully submitted,

_____

**SETH R. LESSER** (SRL-5560)
**ANDREW P. BELL** (APB-1309)
LOCKS LAW FIRM, PLLC
110 East 55th Street
12th Floor
New York, NY 10022
(212) 838-3333
_www.lockslaw.com_

**JAMES B. FISHMAN** (JBF-8998)
FISHMAN & NEIL, LLP
305 Broadway
Suite 900
New York, NY  10007
(212) 897-5840
_www.tenantslaw.net_

**STACY J. CANAN** (SJC-4745)
AARP Foundation
601 E Street, N.W.
Washington, D.C.  20049
(202) 434-6045
_www.aarp.org/foundation_
_pro hac vice_ admission pending

Attorneys for the Plaintiff and Plaintiff-
Intervenor-Applicant

27