UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ADAM WHITE, et ano.,

               Plaintiffs,

     -against-                                  04 Civ. 1611 (LAK)

FIRST AMERICAN REGISTRY,

               Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

               James B. Fishman
               FISHMAN & NEIL, LLP

               Seth R. Lesser
               Andrew P. Bell
               LOCKS LAW FIRM, PLLC

               Stacy J. Canan
               AARP FOUNDATION

               *Attorneys for Plaintiff*


               Suzanne M. Berger
               BRYAN CAVE LLP
               *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

       Despite misgivings, I previously certified a settlement class and approved a settlement of this action that included payment of attorneys fees and expenses of more than $900,000, extremely limited programmatic changes by the defendant, and the creation of a settlement fund of $1,900,000

2

to pay up to $100 to each class member submitting a timely and valid claim, with any balance to go to appropriate governmental and/or charitable entities for defined purposes.[1] Not surprisingly, only 4,100 class members filed valid and timely claims, so more than $1,200,000 remains. Plaintiffs move for an order approving a plan of distribution. Defendant objects in part.

The proposed plan includes a broad array of educational, training and informational programs for members of the public and the Bar. In addition, it proposes to distribute some of the funds for the purpose of providing "legal representation to low-income tenants who require legal assistance in resolving tenant blacklisting problems, including, where necessary, litigation to achieve appropriate relief such as the expungement benefit included in the settlement."[2] Defendant opposes this latter object, arguing that distribution of settlement funds for legal representation and litigation would violate the settlement agreement.

Section III.B.2 of the settlement agreement provides that any settlement funds remaining after distribution of payments to class members are to be distributed to "appropriate governmental and/or charitable entities to further the goal of increasing awareness of tenant screening and the duties and obligations under the FCRA [Fair Credit Reporting Act] and the NYFCRA [New York Fair Credit Reporting Act]."

Plaintiffs' moving papers effectively acknowledged that the use of excess settlement funds to finance legal representation and litigation would go beyond the purposes for which the settlement agreement permits the use of such funds. They contended, however, that the Court may

---

[1] *White v. First American Registry, Inc.*, No. 04 Civ. 1611 (LAK), 2007 WL 703926, at *2 (S.D.N.Y. Mar. 7, 2007).

[2] Pl. Mem. 7.

approve such use under the *cy pres* doctrine – on the theory that the use of the money to fund legal representation would "'com[e] as near as possible'" to the uses permitted by the settlement agreement or, put another way, would be "the 'next best use'"[3] – or, if it may not oppose such expenditures under the terms of the settlement agreement, that it should modify the settlement agreement to accommodate plaintiffs' proposed plan.

The *cy pres* "doctrine originated to save testamentary charitable gifts that would otherwise fail.  Under *cy pres*,  if the testator had a general charitable intent, the court will look for an alternate recipient that will best serve the gift's original purpose.  In the class action context, it may be appropriate for a court to use *cy pres* principles to distribute unclaimed funds.  In such a case, the unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated."[4]

In this case, plaintiffs have failed to demonstrate that the unclaimed settlement funds cannot all be distributed as required by the settlement agreement – i.e., "to further the goal of increasing awareness of tenant screening and the duties and obligations under" pertinent laws.  As defendant argues, there is consequently no reason to apply the *cy pres* doctrine.

Faced with this reality, plaintiffs shifted ground in their reply papers.  Their reply memorandum makes two new arguments, viz. (1) use of the funds to provide legal representation for tenants would "further the goal of increasing awareness of tenant screening and the duties and

---

[3]  Pl. Mem. 13.

[4]  *In re Holocaust Victim Assets Litig.*, 424 F.3d 158, 161 n.3 (2d Cir. 2005) (quoting *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682-83 (8th Cir. 2002) (internal citations omitted)).

obligations under the FCRA and the NYFCRA"[5] and thus come within the terms of the settlement agreement,[6] and (2) the parties during settlement negotations could not agree on language explicitly permitting or prohibiting the use of excess settlement funds to pay for litigation and therefore "purposely left it [i.e., the permissibility of such use] somewhat vague and ambiguous."[7]  These arguments are of no avail.

First, plaintiffs will not be heard to advance for the first time in reply papers new arguments that could and should have been made in their opening papers.  To countenance such action would promote litigation by ambush and, in any case, deprive defendant of a fair opportunity to respond.

Second, the argument that the use of excess funds to finance legal representation of tenants in litigation is inconsistent both with the position plaintiffs took in their moving papers and with the second argument made in their reply papers.  As to the first point, there would have been no reason to seek relief under the *cy pres* doctrine if in fact the proposed use of the money came within the terms of the settlement agreement. As to the second, it is difficult to see how plaintiffs can argue now that the settlement agreement permitted such use at the same time that they argue also that the parties could not agree upon the point during negotiations and, indeed, "purposely left it somewhat vague and ambiguous."

Third, it is difficult to see why plaintiffs believe that they are helped by their assertion that the parties could not agree and deliberately left the issue unresolved in the settlement agreement.

---

[5] Settlement Agreement § III.B.2.

[6] Pl. Reply Mem. 4 *et seq.*

[7] *Id.* at 3.

5

Assuming the truth of this assertion,[8] the logical consequence would appear to be either that (1) the entire settlement is invalid because the issue was material and the agreement incomplete as to a material term, or (2) the issue was not material, in which event plaintiffs lose because there was no agreement on the point.[9]  And whatever the benefits of such constructive ambiguity in the art of diplomacy,[10] the Court sees no proper basis on which it may construct a term to resolve a point of contention that the parties did not agree upon.

Accordingly, plaintiffs' motion [docket item 174] is denied without prejudice to plaintiffs submitting for approval a new plan of distribution that complies with the settlement agreement.  This of course is not to say that plaintiffs' objective is unworthy or that defendant's position is laudable.  It is to say only that the Court may not adopt any idea it may have as to the desirable use of the funds in the face of an explicit agreement that does not permit the use in question, at least in the absence of a showing that the funds cannot be used for the purposes that the agreement in fact contemplated.

SO ORDERED.

Dated: January 7, 2009

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[8] There is no evidence that it is so.  The assertion appears only in plaintiffs' unsworn reply memorandum.

[9] *See* Omri Ben-Shahar, *"Agreeing to Disagree": Filling Gaps in Deliberately Incomplete Contracts,* 2004 WIS. L. REV. 389 (2004) (arguing that when contracting parties have deliberately papered over with ambiguous language points about which they disagree, courts should enforce the contracts to the extent the parties did agree).

[10] *See* Orde F. Kittrie, *More Process Than Peace: Legitimacy, Compliance, and the Oslo Accords,* 101 MICH. L. REV. 1661, 1700-11 (2003).